```
            IN THE UNITED STATES DISTRICT COURT
          FOR THE EASTERN DISTRICT OF PENNSYLVANIA


CENTENNIAL SCHOOL            :    CIVIL ACTION
DISTRICT,                    :    NO. 08-982
                             :
      Plaintiff,             :
                             :
      v.                     :
                             :
                             :
PHIL L. and LORI L.          :
ex. rel. MATTHEW L.,         :
                             :
      Defendants.            :
```


M E M O R A N D U M

EDUARDO C. ROBRENO, J.                          JUNE 17, 2008

         Before the Court is Plaintiff Centennial School

District's motion to dismiss the counterclaim in part for failure

to state a claim upon which relief may be granted (doc. no. 9).

The motion will be granted in part and denied in part.  The

motion also raises issues implicating the Court's subject matter

jurisdiction, which the Court will consider sua sponte.


I.    BACKGROUND

      A.   Matthew's Expulsion

         Matthew L. has been diagnosed with attention deficit

hyperactivity disorder ("ADHD") and, until recently, was a

student in the Centennial School District ("School District").

In February 2006, the School District conducted an evaluation of

Matthew and determined that he was not eligible for special

education and related services.  On May 23, 2007, Matthew caused
a bomb scare by writing a threatening message on a school
bathroom wall and was immediately suspended from school.

Matthew was afforded a pre-expulsion hearing on June 7,
2007.  In addition to this hearing, Lori L. and Phil L.,
Matthew's parents, sought a hearing to determine whether
Matthew's misconduct was a manifestation of his ADHD
("manifestation determination").[1]  The School District refused
this request, but agreed to conduct a second evaluation of
Matthew on August 24, 2007, again finding that he was not
eligible for special education and related services.  While the
expulsion decision was pending, Matthew's parents withdrew him
from the School District and enrolled him in the Wyncote Academy,
a private educational institution.  Matthew was expelled from the
School District on November 27, 2007.

B.    The Due Process Hearing

Before the expulsion, on September 13, 2007, Matthew's
parents requested an administrative due process hearing pursuant
to the Individuals with Disabilities Education Act (IDEA), 20

---

[1]    As explained below, if a child is eligible for the
procedural protections of the Individuals with Disabilities Act,
the educational placement of that child may not be changed due to
a violation of the code of student conduct if that violation was
caused by a manifestation of the child's disability, unless
special circumstances exist.  See 20 U.S.C. § 1415(k)(1)(E)-(G).

U.S.C. § 1415(f)(1)(A), by letter to counsel for the School

District.  In pertinent part, the letter states:

> I write at this time to request a due process hearing
> on behalf of the family for the purpose of challenging
> the District's determination that Matt is not eligible
> for special education services or for reasonable
> accommodations under the IDEA and/or § 504 of the
> Rehabilitation Act, and, further that he is not
> entitled to a manifestation hearing, or an equivalent
> process in accordance with the aforesaid statutes prior
> to the pursuit of expulsion proceedings against him. .
> . .  I have requested that Mathew [sic] be treated as a
> child with a disability, or as a child who is "thought
> to be disabled" pursuant to 20 U.S.C. § 1415(d) and 34
> C.F.R. § 300.534.  Accordingly, I renew my request--
> originally made to Superintendent Masko--that a
> manifestation hearing be convened in order to determine
> whether the action that is the basis for the expulsion
> proceeding was a manifestation of Matthew's disability.
> . . .
>
> In accordance with the above, the parents
> will assert the following at the due process hearing in
> this matter[:] 1) that the District has, by failing to
> identify Matthew as a special education student and/or
> as eligible for reasonable accommodations under § 504,
> failed to provide Matthew with an appropriate education
> for a period of two years prior to the due process
> shearing [sic] request, and; 2) that the District has
> failed to provide Matthew with an appropriate education
> for the current school year.  The parents will ask the
> hearing officer to award appropriate compensatory
> education and tuition reimbursement for his attendance
> at the Wyncote Academy, together with transportation
> costs.  Alternatively, the parents are willing to
> resolve this matter by an agreement to provide that
> relief together with reimbursement of their reasonable
> attorney's fees and costs.

R., Ex. 8 (emphases added).  A copy of the letter was also sent

to the School District and to the Office for Dispute Resolution

of the Pennsylvania Department of Education, and was subsequently

made part of the administrative record.

The due process hearing was held over four sessions between December 10 and December 20, 2007.  At the very beginning of the hearing, the hearing officer asked counsel to clarify the issues that were before him:

> THE HEARING OFFICER: Good morning. . . .  The purpose of this hearing is to present evidence to determine if the student has been receiving an appropriate educational program.  The issue in this hearing relates to, first, is the student eligible for services; second, whether the student is eligible for tuition reimbursement for 2007-2008 for the Wyncote Academy; and third, is the student eligible as a [sic] remedy of compensatory education in the fall of 2006 to the initiation of his services at Wyncote Academy.  <u>Is that your understanding of the issues, Fred?</u>
>
> MR. STANCZAK [counsel for Matthew's parents]: <u>That's correct.</u>
>
> THE HEARING OFFICER: <u>Is that your understanding of the issues?</u>
>
> MS. SAIA [counsel for the School District]: <u>Yes.</u>  To be specific though he is asking for eligibility under IDEA as well as 504, just to the extent that there are two different standards so that we are clear on that.
>
> THE HEARING OFFICER: Okay. . . .

R., Ex. 6, at 4:1-5:6 (emphases added).

The hearing officer next invited counsel to offer opening statements, asking them to "state why they asked for the hearing" and "what areas of disagreement exist."  <u>Id.</u> at 9:4-5. Counsel for Matthew's parents, in his opening, stated in pertinent part:

> [Matthew] was [ ] charged administratively with

-4-

violation of the school rules, subjecting him to an
expulsion.  At that point the parents retained counsel
and on the parents' behalf I as their counsel wrote to
the School District and asked them to consider whether
<u>Matthew was a student with a disability and . . .
therefore entitled to a manifestation hearing, a review
of his behavior to determine whether in fact it was a
manifestation of this disability.</u>  That request was
neither granted nor denied at that time, but resulted
in a second evaluation . . . .  I believe . . . the
[evaluation] report acknowledges that there has been an
impact on his education functioning, the contention
that is raised by the District is that with medication
there is complete remediation of the symptoms of the
disability, therefore making unnecessary any reasonable
accommodation.  That essentially is the issue.  The
parents disagree with that conclusion. . . .

. . . .

        Given that, [the] parents are asking in this
hearing that the Hearing Officer conclude based on the
evidence that will be presented that the determination
that Matthew is not a child with a disability and not
entitled to reasonable accommodations or special
education is erroneous and should be reversed.  They
are asking for compensatory education as indicated
since the date of the February 2006 Evaluation Report
and also for tuition reimbursement for the Wyncote
Academy.  <u>We would also ask as a result of those
findings that the District be required to rescind its
expulsion determination and provide Matthew with a
manifestation determination.</u>

<u>Id.</u> at 12:7-16:11 (emphases added).

        In her opening, counsel for the School District also

briefly addressed the issue of whether Matthew is entitled to the

procedural protections of the IDEA and Rehabilitation Act:

    While Matthew does have a disability and the District
    does not dispute that [he] has been diagnosed as having
    ADHD, he nevertheless does not demonstrate the need for
    specially designed instruction because of his ADHD.
    Because Matthew is not eligible under IDEA, he is
    therefore not entitled to tuition reimbursement,

-5-

> compensatory education or the procedural protections of IDEA <u>including a manifestation determination</u>.
>
> The District will also put on evidence that Matthew [L.] is also not an eligible student under Section 504 of the Rehabilitation Act. . . .  Based on the thorough testing Matthew has undergone and the controlling case law, it is clear that he is not eligible under Section 504 and is therefore a regular education student.  Therefore he is not entitled to compensatory education or the procedural protections <u>including a manifestation determination</u>.

R., Ex. 5, at 329:12-335:8 (emphases added).

The testimony during the hearing, in contrast, focused almost exclusively on Matthew's eligibility for special education under the IDEA and Rehabilitation Act.  There was no testimony specifically relating to Matthew's alleged due process rights.

In fact, following the opening statements, the next time that the issue of Matthew's entitlement to a manifestation determination or similar process was addressed was closing statements.  The hearing officer instructed counsel to "summarize the information, the testimony and evidence that has been presented as part of this case."  R., Ex. 3, at 536:22-25.

In her closing statement, counsel for the School District reiterated the hearing officer's summary of the issues to be decided, which, as noted above, did not include the issue of whether a manifestation determination or similar process was required, and, during the argument, mentioned the manifestation determination only tangentially:

Parents requested the 2007 evaluation with the hopes of

having Matthew found eligible and under the cloak of
disability to avoid the ramifications of his action.
However, even if eligible, a manifestation
determination would undoubtedly fail to find Matthew's
actions were caused by or had a direction [sic] or
substantial relationship to his ADHD.

Id. at 543:23-544:7.  Counsel for Matthew's parents also

summarized the issues, without including the procedural due

process issue, which he addressed at the end of his remarks:

[A] School District is not allowed to expel a student
who either has been found to be a student with a
disability or the student was thought to be disabled
until it convenes a manifestation meeting to determine
whether or not the behavior was a manifestation of
disability.  Now we don't have any determination at
this point as to whether Matthew's behavior was a
manifestation of disability because the School District
refused to convene a manifestation hearing to make that
determination . . . .  Therefore it is clear that the
District should have convened a manifestation hearing
and should have made the determination as to whether or
not Matthew's behavior on that day was affected by
disability. . . .  The District's argument is simply
that a Hearing Officer cannot hear a direct appeal of
an expulsion that should be brought to the Commonwealth
Court.  While certainly we have no argument with that
proposition, we are not bringing any kind of direct
appeal of that determination before the Hearing
Officer.  The claim that we are bringing is a claim
that the District ignored in its argument which is that
Matthew's right to a manifestation hearing under the
IDEA and under Section 504 was violated by the
District's having gone forward with an expulsion
hearing before making the determination as to whether
or not his behavior was a manifestation of his
disability at the time when it had a clear reason to
suspect that it was[;] therefore, again as in the
Holbert case, in which the expulsion was rescinded by a
Hearing Officer, the Hearing Officer in this case has
the same authority to do so here.

Id. at 554:16-25 (emphases added).  The due process hearing

concluded shortly after these remarks.

-7-

C.    <u>The Hearing Officer's Decision</u>

The hearing officer rendered his decision on January
11, 2008.  Other than a cursory mention, neither the introductory
statement nor the findings of fact contain any discussion of the
process afforded Matthew.  The findings of fact state only that
"[t]he District completed a pre-expulsion hearing on Matthew on
June 7, 2007," and "[t]he District completed an evaluation on
August 24, 2007."  R., Ex. 2, at 5.  There is no analysis of
whether the process offered was sufficient under the
Rehabilitation Act.  The administrative record contains some
additional information about the process afforded Matthew--
attaching the report generated from the August 2007 evaluation
and a summary of the June 2007 hearing as exhibits--but there is
no specific discussion of the extent of the process offered.

In fact, the hearing officer specifically enumerated
the issues presented, none of which included whether Matthew's
procedural due process rights were violated:

> Is Matthew an eligible student under the Individuals
> with Disabilities Act?
> Is Matthew an eligible student under Chapter 15/Section
> 504 of the Rehabilitation Act?
> Is Matthew eligible for tuition reimbursement (and
> transportation) for the 2007-2008 school year to
> Wyncote Academy?
> Is Matthew eligible for compensatory education for
> inappropriate services for a denial of a free
> appropriate public education for the 2006-2007 school
> year?

<u>Id.</u> at 7.  After an analysis of the law and the facts, the

hearing officer made the following rulings:

     1.   Matthew [L.] is eligible as a student requiring a
     Section 504/Chapter 15 service agreement as a result of
     his ADHD.
     2.   Matthew [L.] is not eligible under the Individuals
     with Disabilities Education Act as a student with a
     learning disability.
     3.   Matthew [L.] is not eligible for tuition
     reimbursement at the Wyncote Academy.
     4.   Matthew [L.] is not eligible for compensatory
     education services due to a denial of free appropriate
     public education.

Id. at 23.  The hearing officer's opinion contains no discussion

of Matthew's alleged procedural due process rights, whether to a

manifestation determination or otherwise.


     D.   Procedural Posture

          Both the School District and Matthew's parents have

appealed the decision of the administrative hearing officer to

this Court.[2]  The School District brings a claim challenging the

_____

          [2]    As discussed below, Matthew's parents are required to
exhaust administrative remedies under the IDEA in this case
because they seek relief that is "available" under the IDEA.  20
U.S.C. § 1415(l).  The parties agree, however, that because the
instant claims have been brought solely under the Rehabilitation
Act, not the IDEA, they need not appeal the hearing officer's
decision to the Special Education Due Process Appeals Panel
before bringing suit in this Court.  See 22 Pa. Code §§
14.162(o), 15.8(d) (requiring administrative appeal only if
"issues under Chapter 14 [containing regulations implementing the
IDEA] are raised for decision").  As such, this case is
distinguishable from R.T. ex rel. J.S. v. Southeastern York
County School District, No. 07-232, 2007 WL 626056 (M.D. Pa. Feb.
23, 2007).  In R.T., the Court required the parties to go before
the Appeals Panel, even though the plaintiff "appealed the
manifestation determination under § 504 only," because the
hearing officer found that the student was "eligible for services

hearing officer's ruling that Matthew is an eligible student
under the Rehabilitation Act, and Matthew's parents bring a
counterclaim challenging the hearing officer's denial of tuition
reimbursement and compensatory education.  The parents also seek
an order

> [d]eclar[ing] that the Plaintiff, Centennial School
> District, violated Matthew's right to due process as
> provided by § 504 of the Rehabilitation Act and its
> implementing regulation at 34 C.F.R. § 104.36, by
> permanently expelling him from his school without
> convening a manifestation hearing, as set forth in the
> IDEA, 20 U.S.C. § 1415(k)(E) and 34 C.F.R. §
> 300.350(c), (e) or similar process as allowed by law,
> to determine whether the behavior that was the basis
> for the expulsion charge was a manifestation of his
> disability.

Answer and Countercl. 6 (doc. no. 3) (emphases added).  The
School District moves to dismiss this portion of the
counterclaim, arguing that Matthew's parents have failed to
exhaust administrative remedies.


II.  DISCUSSION

   A.   Motion to Dismiss

        In deciding a motion to dismiss for failure to state a
claim upon which relief can be granted, the Court must "accept as

---

under IDEA" and that his "conduct was a manifestation of his
disability based on the definition contained in IDEA."  Id. at
*3.  An administrative appeal was thus required because "IDEA
issues existed in this case after the hearing officer's
decision."  Id.  Here, the hearing officer found that Matthew is
not an eligible student under the IDEA, and that ruling has not
been challenged before this Court.

true all allegations in the complaint and all reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the non-moving party." <u>DeBenedictis v. Merrill Lynch & Co., Inc.</u>, 492 F.3d 209, 216 (3d Cir. 2007) (quotation omitted).  The Court need not, however, "credit either bald assertions or legal conclusions in a complaint when deciding a motion to dismiss." <u>Id.</u> (quotation omitted).  The "'[f]actual allegations must be enough to raise the right to relief above the speculative level.'" <u>Phillips v. County of Allegheny</u>, 515 F.3d 224, 232 (3d Cir. 2008) (quoting <u>Bell Atl. Corp. v. Twombly</u>, 127 S. Ct. 1955, 1965 & n.3 (2007)).  Viewing the allegations as such, the Court must dismiss the complaint if it fails to state a claim upon which relief can be granted.

     B.   <u>Due Process Requirements</u>

        1.   <u>Constitutional requirements</u>

A fundamental protection of the Constitution is the right to due process of law.  <u>See</u> U.S. Const. Ams. V, XIV. Decisions to discipline or expel students are no exception to this constitutional entitlement.  <u>See</u> <u>Goss v. Lopez</u>, 419 U.S. 565, 581 (1975) ("Students facing temporary suspension have interests qualifying for protection of the Due Process Clause, and due process requires, in connection with a suspension of 10 days or less, that the student be given oral or written notice of

the charges against him and, if he denies them, an explanation of the evidence the authorities have and an opportunity to present his side of the story.  The Clause requires at least these rudimentary precautions against unfair or mistaken findings of misconduct and arbitrary exclusion from school.").

Where a student is expelled, the Court has acknowledged that "more formal procedures" than notice and an opportunity to be heard may be required.  Id. at 584.  In such a situation, "determination of the amount of process due in a given situation involves a balancing of interests."  Palmer ex rel. Palmer v. Merluzzi, 868 F.2d 90, 95 (3d Cir. 1989).

Here, however, Matthew's parents do not ground their procedural due process claim in the Constitution, but rather seek to vindicate Matthew's alleged statutory right to due process "as provided by § 504 of the Rehabilitation Act."  Specifically, Matthew's parents seek "a manifestation hearing . . . or similar process as allowed by law, to determine whether the behavior that was the basis for the expulsion charge was a manifestation of his disability."  Answer and Countercl. 6.

2.   Manifestation determination under the IDEA

A manifestation determination is a procedural protection provided by the IDEA:

> [W]ithin 10 school days of any decision to change the
> placement of a child with a disability because of a

-12-

> violation of a code of student conduct, the local
> educational agency, the parent, and relevant members of
> the IEP Team . . . shall review all relevant
> information in the student's file, including the
> child's IEP, any teacher observations, and any relevant
> information provided by the parents to determine (I) if
> the conduct in question was caused by, or had a direct
> and substantial relationship to, the child's
> disability; or (II) if the conduct in question was the
> direct result of the local educational agency's failure
> to implement the IEP. . . .  If the local educational
> agency, the parent, and relevant members of the IEP
> Team determine that either subclause (I) or (II) . . .
> is applicable for the child, the conduct shall be
> determined to be a manifestation of the child's
> disability.

20 U.S.C. § 1415(k)(1)(E).  Once a determination is made that the

child's violation is a manifestation of his or her disability,

the child must be returned to his or her prior educational

placement unless certain special circumstances exist.  See 20

U.S.C. § 1415(k)(1)(F)-(G).

At the due process hearing, however, the hearing

officer ruled that Matthew was not a student with a disability

under the IDEA and thus not eligible for its protections, and

Matthew's parents have not challenged that ruling here.  Instead,

Matthew's parents assert that Matthew has an independent

entitlement to a manifestation determination under the

Rehabilitation Act and its implementing regulations.


3.   Section 504 hearing under the Rehabilitation Act

Unlike the IDEA, the terms of the Rehabilitation Act do

not provide expressly for a manifestation determination.  Section

-13-

504 of the Rehabilitation Act provides, in pertinent part:

> No otherwise qualified individual with a disability in the United States . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance . . . .

29 U.S.C. § 794(a).  Also contained in the Rehabilitation Act's mandate is the requirement that a recipient of federal funds "provide a free appropriate public education to each qualified handicapped person who is in the recipient's jurisdiction, regardless of the nature or severity of the person's handicap." 34 C.F.R. § 104.33.

The text of the Rehabilitation Act does not contain any express procedural protections; however, the regulations implementing the Act require specific due process protections:

> A recipient that operates a public elementary or secondary education program or activity shall establish and implement, with respect to actions regarding the identification, evaluation, or educational placement of persons who, because of handicap, need or are believed to need special instruction or related services, a system of procedural safeguards that includes notice, an opportunity for the parents or guardian of the person to examine relevant records, an impartial hearing with opportunity for participation by the person's parents or guardian and representation by counsel, and a review procedure.  Compliance with the procedural safeguards of section 615 of the Education of the Handicapped Act [now the IDEA][3] is one means of meeting this requirement.

---

[3]     The Education of the Handicapped Act, Pub. L. No. 94-1142, codified at 20 U.S.C. § 1415, was the statutory predecessor to the IDEA.

-14-

34 C.F.R. § 104.36.

Therefore, although it does not provide for a manifestation determination, the Rehabilitation Act does require recipients of federal funds to implement "procedural safeguards," including notice, an opportunity to examine records and be heard, and a review process.  Some courts have referred to these protections collectively as a "Section 504 hearing."  See, e.g., K.U. v. Alvin Indep. Sch. Dist., No. 98-40203, 1998 WL 912198, at *1 & n.1 (5th Cir. Dec. 18, 1998) (unpublished); K.U. ex rel. Michael U. v. Alvin Independent School Dist., 991 F. Supp. 599, 604 (S.D. Tex. 1998); R.J. v. McKinney Indep. Sch. Dist., No. 05-257, 2005 WL 3576839, at *1 (E.D. Tex. Dec. 29, 2005).

As noted above, the regulations governing Section 504 hearings provide that "[c]ompliance with the procedural safeguards of [the IDEA]" will satisfy the Rehabilitation Act's due process requirements.  Courts have cited this language in holding that "where a school district complies with § 1415 [of the IDEA], [it] also satisfies the requirements of § 504 of the Rehabilitation Act."  Michael C. ex. rel. Stephen C. v. Radnor Twp. Sch. Dist., No. 98-4690, 1999 WL 89675, at *4 (E.D. Pa. Feb. 4, 1999); R.J., 2005 WL 3576839, at *1 n.2 ("A § 504 hearing may be satisfied by incorporating IDEA safeguards.").

This does not mean, however, that the due process protections of the Rehabilitation Act require a manifestation

determination.  As stated in the regulations, compliance with the
IDEA's procedural safeguards is "one means" of satisfying Section
504's procedural obligations; the regulations do not say that it
is the <u>only</u> means of doing so.  34 C.F.R. § 104.36.  In other
words, the regulation provides, and courts have accordingly held,
that a manifestation determination is sufficient to satisfy the
requirements of Section 504, but not that a manifestation
determination is necessary to satisfy those requirements.
Rather, the regulation broadly requires "procedural safeguards,"
such as notice, an opportunity to examine records and be heard,
and a review process.  <u>Id.</u>

  C. <u>Exhaustion Under the IDEA and Rehabilitation Act</u>

    Before a party can bring suit under the IDEA, that
party must exhaust the IDEA's administrative remedies.  <u>See</u> 20
U.S.C. § 1415(f)(1)(A) (providing for an "impartial due process
hearing" before an administrative hearing officer).  Moreover,
the exhaustion requirements of the IDEA are not limited to
actions brought under the IDEA.  Rather:

> [B]efore the filing of a civil action under such laws
> seeking relief that is also available under this
> subchapter, the procedures under subsections (f) and
> (g) of this section shall be exhausted to the same
> extent as would be required had the action been brought
> under this subchapter.

<u>Id.</u> § 1415(l).  Thus, to the extent that any claim seeks relief
that is "available" under the IDEA, the IDEA's administrative

remedies must be exhausted before such an action is brought.

Matthew's parents seek an order "[d]eclar[ing] that the Plaintiff, Centennial School District, violated Matthew's right to due process as provided by § 504 of the Rehabilitation Act . . . by permanently expelling him from his school without convening a manifestation hearing . . . or similar process allowed by law." The parties agree that this claim requires exhaustion under the IDEA.  See M.G. v. Crisfield, --- F. Supp. 2d ---, 2008 WL 611679, at *14 (D.N.J. 2008) ("[A]ny claim relating to Defendants' failure to provide a manifestation determination is clearly seeking relief that is also available under the IDEA, and therefore is subject to Section 1415(l)'s exhaustion requirement."); Hesling v. Avon Grove Sch. Dist., 428 F. Supp. 2d 262, 275 (E.D. Pa. 2006) (holding that "declaratory relief for violation of . . . rights under the IDEA . . . is available through the statute's administrative proceedings").

Accordingly, Matthew's parents' were required to fully exhaust the IDEA's administrative remedies before bringing this action.  However, as discussed further below, Matthew's parents have not exhausted administrative remedies with respect to the claim seeking a declaration that the School District violated Matthew's procedural due process rights by failing to provide some process "similar" to a manifestation determination.

-17-

1.   <u>Exhaustion</u>

This is not a case in which a party altogether failed to avail himself of the IDEA's administrative remedies.  Rather, Matthew's parents properly instituted a due process hearing pursuant to the IDEA and Pennsylvania regulations.  The relevant inquiry, therefore, is, what issues were raised before and decided by the administrative hearing officer?

a.   <u>Manifestation determination</u>

Matthew's alleged procedural due process right to a manifestation determination was raised several times during the due process hearing.  First, in a letter to the School District requesting a due process hearing, which was filed of record in the administrative proceeding, counsel for Matthew's parents indicated his intent to challenge the School District's finding that Matthew "is not entitled to a manifestation hearing, or an equivalent process."  Second, during both opening and closing statements, counsel for the parents discussed the issue of Matthew's right to a manifestation determination, even requesting "that the District be required to rescind its expulsion determination and provide Matthew with a manifestation determination."  Finally, counsel for the School District did not argue that the manifestation determination issue was not properly before the hearing officer, but rather responded to Matthew's

parents' arguments, contending that Matthew is not entitled to a manifestation determination because he is not eligible under either the Rehabilitation Act or the IDEA.  Thus, it appears that Matthew's parents did in fact raise the manifestation determination issue before the hearing officer.

It is undisputed, however, that the hearing officer did not actually decide the issue of whether the denial of a manifestation determination violated Matthew's due process rights under the Rehabilitation Act.  The hearing officer's failure to dispose of this issue may be due to the confusion caused by the fact that counsel did not raise the manifestation determination issue when the hearing officer asked for a summary of the issues. The only issue actually resolved by the hearing officer relating to the Rehabilitation Act was whether Matthew is "an eligible student under Chapter 15/Section 504 of the Rehabilitation Act." The hearing officer held that "Matthew [L.] is eligible as a student requiring a Section 504/Chapter 15 service agreement as a result of his ADHD."  The words "manifestation determination" do not even appear once in the hearing officer's decision.

In sum, although the manifestation determination issue was raised by the parties at the hearing, for whatever reason, the hearing officer did not rule on it.  Therefore, Matthew's parents have not exhausted administrative remedies with respect to their claim that the School District violated Matthew's due

process rights by failing to provide a manifestation determination.  See Mapp v. William Penn Sch. Dist., No. 99-4440, 2000 WL 1358484, at *4 (E.D. Pa. Sept. 18, 2000) ("[T]he record clearly shows that the Hearing Officer did not decide any other issues related to [the student's] transportation to [school]. Thus, to the extent that the Plaintiffs are now attempting to bring a civil action to address the District's actual provision of transportation for [the student] to [the school], they have not fully exhausted their administrative remedies."); Sarah Z. v. Menlo Park City Sch. Dist., No. 06-4098, 2007 WL 1574569, at *5 (N.D. Cal. May 30, 2007) (requiring exhaustion of "substantive question of whether speech therapy and tutoring services were required" even though "procedural issue of whether speech therapist was required to attend an IEP meeting" had been exhausted because issues were "separate and distinct").

> b.  Similar Section 504 hearing

Matthew's procedural due process rights under the Rehabilitation Act, other than his alleged right to a manifestation determination, received even less attention during the due process hearing.  As noted above, the letter requesting a due process hearing stated that Matthew's parents would challenge the School District's finding that Matthew is not entitled to a manifestation determination "or an equivalent process."  However,

to the limited extent that procedural due process was discussed at the hearing, the discussion focused exclusively on Matthew's entitlement to a manifestation determination, and did not make clear what the contours of the "equivalent process" that Matthew's parents sought were.

In addition, the administrative record is not clear as to exactly what process the School District did offer Matthew. The only relevant findings of fact state that "[t]he District completed a pre-expulsion hearing on Matthew on June 7, 2007," and "[t]he District completed an evaluation on August 24, 2007." R., Ex. 2, at 5.

The administrative record does contain some information about the process offered to Matthew, such as a summary of the June 7, 2008 pre-expulsion hearing, and the report generated from the August 24, 2007 pre-expulsion evaluation.  It is clear, however, that the hearing officer did not consider this information in any detail as it relates to the procedural due process claim.  There are no findings of fact concerning the specific procedural protections that were made available at these hearings, such as who was present, what type of hearing was afforded, whether notice was given, or whether an examination of records was permitted.  Moreover, the hearing officer did not decide the issue of whether the process afforded was sufficient to meet the School District's obligation to provide a Section 504

hearing under the Rehabilitation Act.

Accordingly, Matthew's parents have failed to exhaust administrative remedies with respect to their claim that the School District violated Matthew's due process rights by failing to provide a hearing "similar" to a manifestation determination.

2.  <u>Futility</u>

Even if exhaustion has not occurred, "where recourse to IDEA's administrative proceedings would be futile or inadequate, the exhaustion requirement is excused."  <u>Timothy B. ex rel. J.B. v. Neshaminy Sch. Dist.</u>, 153 F. Supp. 2d 621, 623-24 (E.D. Pa. 2001) (citing <u>Honig v. Doe</u>, 484 U.S. 305, 327 (1988)).  For example, exhaustion is futile when the unexhausted issue is "a purely legal one."  <u>Pardini v. Allegheny Intermediate Unit</u>, 420 F.3d 181, 192 n.13 (3d Cir. 2005) ("Courts require exhaustion where the peculiar expertise of an administrative hearing officer is necessary to develop a factual record.  Where the factual record is fully-developed and no evidentiary disputes remain, the court can and should decide legal issues." (quotation omitted)).

a.  <u>Manifestation determination</u>

Whether Matthew is entitled to a manifestation determination under the Rehabilitation Act is a purely legal issue.  Moreover, it is an issue that need not detain the Court

for long.  Nothing in the text of the statute or its regulations,
or in the case law cited by Matthew's parents, suggest that a
student is entitled to a manifestation determination under the
Rehabilitation Act.  A manifestation determination is a creature
of statute; specifically, the IDEA, not the Rehabilitation Act.
Matthew's parents seek to engraft an IDEA procedural protection
onto the Rehabilitation Act's statutory scheme, but provide no
reason why the Court should engage in such statutory alchemy.
Importing a "manifestation determination" in the Rehabilitation
Act appears especially unwise in light of the express provision
in the regulations for "a system of procedural safeguards" that
includes notice, an opportunity to examine relevant records and
be heard, and a review procedure.  34 C.F.R. § 104.36.

        A manifestation determination under the IDEA, in
contrast, requires not only the above process, but additionally
requires that the team who reviews the case must include certain
specific persons, that all relevant information in the student's
file be reviewed, that the hearing take place within 10 days of
the disciplinary action, and that expulsion may occur under
certain specific circumstances.  See 20 U.S.C. § 1415(k)(1)(E)-
(G).  Although students qualifying under the Rehabilitation Act
are afforded some procedural protections--namely, a Section 504
hearing--they are not afforded the specific protection of a

"manifestation determination" under the IDEA.[4]

Accordingly, to the extent that Matthew's parents seek a manifestation determination under the IDEA, the School District's motion to dismiss for failure to exhaust administrative remedies will be denied, as exhaustion would be futile.  It is the Court, not the administrative process, that is the proper forum for resolution of this purely legal issue.[5]

b.  Similar Section 504 hearing

In contrast to the manifestation determination issue, the issue of whether Matthew's due process rights were violated by the School District's alleged failure to afford a Section 504

---

[4]    At least one court has commented that what goes on at a Section 504 hearing may be quite similar to a manifestation determination.  See Ron J. ex rel. R.J. v. McKinney Indep. Sch. Dist., No. 05-257, 2006 WL 2927446, at *4 (E.D. Tex. Oct. 11, 2006) (comparing a Section 504 hearing and a manifestation determination under IDEA and finding that "there is little difference in what would have been presented").  Even assuming that this is true, it does not mean that a Section 504 hearing and a manifestation determination are interchangeable.  As noted above, a manifestation determination is only "one means" of satisfying Section 504's procedural requirement.  See supra Part II.B.3.  It is possible that Section 504 may be satisfied by other means that offer less process than a manifestation determination.  In other words, the amount of process required in a Section 504 hearing may be less than that required by the IDEA in a manifestation determination.

[5]    The Court does not decide the issue of Matthew's entitlement to a manifestation determination at this time.  Should the School District move to strike or dismiss the counterclaim in part for failure to state a claim on which relief can be granted, the Court will take up the issue at that time.

hearing "similar" to a manifestation determination is not a purely legal one.  It is undisputed that Matthew did not receive a manifestation determination as that term is defined under the IDEA; however, Matthew did receive some process before his expulsion, including a June 7 pre-expulsion hearing and an August 24 pre-expulsion evaluation.  The administrative record does not make clear the extent of the process that was afforded at these two hearings, or, for that matter, whether any process was afforded after Matthew's expulsion.  Moreover, the hearing officer did not consider, let alone decide, whether the process afforded to Matthew met the School District's obligations under the Rehabilitation Act.

Therefore, the unexhausted issue is a fact-bound one. The hearing officer must initially determine what process Matthew was afforded in connection with his expulsion.  Then, only after a full factual record is developed, may the hearing officer consider whether the process afforded was sufficient to preserve Matthew's due process rights under the Rehabilitation Act.  Thus, exhaustion is not futile in this case because the hearing officer must develop the record concerning the process offered to Matthew and then decide whether the School District met its due process obligations under the Rehabilitation Act.  Accordingly, the motion to dismiss will be granted as to the portion of the counterclaim seeking a declaration that Matthew's due process

rights were violated by the School District's alleged failure to afford a Section 504 hearing "similar" to a manifestation determination.

III. SUBJECT MATTER JURISDICTION

As set forth above, the Court has found that Matthew's parents failed to exhaust administrative remedies as to the portion of the counterclaim seeking a declaration that Matthew's due process rights under the Rehabilitation Act were violated by the School District's failure to provide a Section 504 hearing "similar" to a manifestation determination.  Exhaustion under the IDEA "is jurisdictional in nature."  W.B. v. Matula, 67 F.3d 484, 493 (3d Cir. 1995), abrogated on other grounds by A.W. v. Jersey City Pub. Sch., 486 F.3d 791 (3d Cir. 2007); Komninos ex rel. Komninos v. Upper Saddle River Bd. of Educ., 13 F.3d 775, 778 (3d Cir. 1994) ("Section 1415(e) [of the IDEA] thus grants subject matter jurisdiction to the district courts.  However, it is clear from the language of the Act that Congress intended plaintiffs to complete the administrative process before resorting to federal court.").  Therefore, Matthew's parents' failure to exhaust implicates the Court's subject matter jurisdiction.

The motion before the Court does not seek dismissal for lack of subject matter jurisdiction pursuant to Rule 12(b)(1).  Rather, it seeks dismissal of the counterclaim in part for

-26-

failure to state a claim pursuant to Rule 12(b)(6).  Nonetheless, the Court has an obligation to ensure that it has subject matter jurisdiction over an action.  <u>See</u> Fed. R. Civ. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action.").

In this case, it appears that Matthew's parents' failure to exhaust administrative remedies as to a portion of the counterclaim may divest the Court of subject matter jurisdiction over the <u>entire</u> counterclaim:

> [T]he plain language of § 1415(1) states that exhaustion of IDEA administrative "procedures" is required "before the filing of a civil action."  20 U.S.C. § 1415(1).  Notably, the statute does not say that each remedy sought must be exhausted before that remedy is pursued in court, but that IDEA administrative procedures must be exhausted before a civil action is filed to vindicate the educational rights of a handicapped child.  This language precludes any interpretation of <u>W.B.</u> and § 1415(1) under which exhaustion is judged with respect to each individual remedy sought by the plaintiff, and implies that <u>the entire action must be dismissed for lack of subject matter jurisdiction whenever any part of the dispute might be resolved at the administrative level</u>.

<u>Hesling</u>, 428 F. Supp. 2d at 275-76 (emphasis added and internal citations and quotations omitted).[6]

The Court may dismiss an action for lack of subject matter jurisdiction <u>sua sponte</u> after providing the parties with

---

[6]     The logic articulated in <u>Hesling</u> appears to require dismissal of the counterclaim, but it does not require dismissal of the School District's complaint, because there has been no contention that the School District failed to exhaust administrative remedies before it filed this action.

notice and an opportunity to be heard.  <u>Neiderhiser v. Borough of Berwick</u>, 840 F.2d 213, 216 n.6 (3d Cir. 1988); <u>Schneller v. Fox Subacute at Clara Burke</u>, No. 07-1949, 2008 WL 1801091, at *2 (3d Cir. Apr. 22, 2008) (unpublished).  The parties in this case have not yet had such an opportunity.  Accordingly, the Court will afford the parties an opportunity to submit supplemental briefing on the issue of whether Matthew's parents' failure to exhaust administrative remedies divests the Court of subject matter jurisdiction over the entire counterclaim.


IV.  CONCLUSION

        Plaintiff's motion to dismiss the counterclaim in part (doc. no. 9) will be granted in part and denied in part.  The motion will be granted in that the portion of the counterclaim seeking an order declaring that Matthew's due process rights under the Rehabilitation Act were violated by the School District's failure to afford him a Section 504 hearing "similar" to a manifestation determination will be dismissed.  The motion will otherwise be denied.

        Furthermore, having raised the issue of subject matter jurisdiction <u>sua sponte</u>, and having found that Matthew's parents failed to exhaust administrative remedies as to a portion of the counterclaim, the Court will afford the parties an opportunity to submit supplemental briefing on the issue of whether Matthew's

parents' failure to exhaust administrative remedies divests the Court of subject matter jurisdiction over the entire counterclaim.  An appropriate order follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| CENTENNIAL SCHOOL | : | CIVIL ACTION |
| DISTRICT, | : | NO. 08-982 |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| PHIL L. and LORI L. | : | |
| ex. rel. MATTHEW L., | : | |
| | : | |
| Defendants. | : | |

**O R D E R**

      **AND NOW**, this **17th** day of **June, 2008,** for the reasons stated in the accompanying Memorandum, it is hereby **ORDERED** that Plaintiff's motion to dismiss the counterclaim in part (doc. no. 9) is **GRANTED in part and DENIED in part**.  The motion is granted as to the portion of the counterclaim seeking an order declaring that Matthew's due process rights under the Rehabilitation Act were violated by the School District's failure to afford him a Section 504 hearing "similar" to a manifestation determination. The motion is otherwise denied.

      **IT IS FURTHER ORDERED** that Defendants shall submit a supplemental memorandum addressing the issue of whether the failure to exhaust administrative remedies divests this Court of subject matter jurisdiction over the entire counterclaim by **June 27, 2008**.  The Plaintiff shall submit a response by **July 8, 2008.**

      **AND IT IS SO ORDERED.**

                  **S/Eduardo C. Robreno**
                    **EDUARDO C. ROBRENO, J.**