IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

CENTENNIAL SCHOOL DISTRICT,  :   CIVIL ACTION
                             :   NO. 08-982
                             :
     Plaintiff,              :
                             :
     v.                      :
                             :
                             :
PHIL L. and LORI L.          :
ex. rel. MATTHEW L.,         :
                             :
     Defendants.             :

M E M O R A N D U M

EDUARDO C. ROBRENO, J.                        MARCH 26, 2010


I.   BACKGROUND

        This action arises as a cross-appeal from an

administrative determination under the Rehabilitation Act.  The

parties are Centennial School District ("District") and Matthew

L., by and through his parents Phil L. and Lori L. ("Parents").

Matthew was a student in the District and was evaluated, but not

deemed eligible, for special education under Section 504(a) of

the Rehabilitation Act, 29 U.S.C. § 794(a).  Matthew is, however,

on psychopharmacological treatment for Attention Deficit

Hyperactivity Disorder ("ADHD").  In the Spring of 2007, Matthew

scrawled a bomb threat on a school bathroom wall and was

subsequently expelled.  Matthew's parents sought an evaluation to

determine his eligibility for special education and, if he was

1

eligible, tuition reimbursement for his placement in the Wyncote

Academy, a private school.

Before Matthew's expulsion, on September 13, 2007,

Matthew's parents requested an administrative due process

hearing, pursuant to the Individuals with Disabilities Education

Act (IDEA), 20 U.S.C. § 1415(f)(1)(A), to evaluate Matthew's

eligibility under both IDEA and Section 504 of the Rehabilitation

Act, and requested compensatory education as well as District

funds for Matthew's placement in a private school.

On January 11, 2008, the hearing officer found that

Matthew was eligible for special education under Section 504(a),

but denied the request for tuition reimbursement and compensatory

education.[1]  (Hr'g Decision, doc. no. 49, Pl.'s Ex. 10.) The

---

[1]      On June 17, 2008, this Court granted the District's
motion to dismiss in part the Parents' counterclaim, holding the
parents had failed to exhaust administrative remedies as to the
due process rights under Section 504 of the counterclaim.  See
Centennial Sch. Dist. v. Phil L. Ex rel. Matthew L., 559 F. Supp.
2d. 634 (E.D. Pa. 2008) (Robreno, J.).  Consequently, this issue
was remanded to the administrative level.  The Hearing Officer
determined that the District met the standard for providing due
process procedures to a Section 504 eligible student, "similar"
to those afforded through a formal IDEA manifestation
determination and found no violation of Matthew's due process
rights. (Doc. no. 49, Ex. 12, "Special Education Hearing Office
Decision", dated 10/9/08.)

        This Court also later denied Defendants' motion for
partial reconsideration of the motion to dismiss and amended the
Court's order of June 17, 2008, to dismiss without prejudice for
lack of subject matter jurisdiction, the Rehabilitation Act
claime in paragraph 22 of Defendant's original counterclaim.  See
Centennial Sch. Dist. v. Phil L. Ex. Rel. Matthew L., No. 08-982,
2008 WL 3539886 (E.D. Pa. Aug. 8, 2008) (Robreno, J.).  In

District challenges the eligibility determination and the Parents

challenge the denial of relief. After an analysis of the law and

the facts, the hearing officer made the following rulings:

> 1. Matthew [L.] is eligible as a student requiring a Section 504/Chapter 15 service agreement as a result of his ADHD.  2. Matthew [L.] is not eligible under the Individuals with Disabilities Education Act as a student with a learning disability. 3. Matthew [L.] is not eligible for tuition reimbursement at the Wyncote Academy.  4. Matthew [L.] is not eligible for compensatory education services due to a denial of free appropriate public education.

(Id. at 23.)

II. LEGAL STANDARDS

A. The IDEA

The purpose of the IDEA is "to ensure that all children

with disabilities have available to them a free appropriate

public education [("FAPE")]." 20 U.S.C. § 1400(d)(1)(A).  A FAPE

is "an educational instruction 'specially designed . . . to meet

the unique needs of a child with a disability,' coupled with any

additional 'related services' that are 'required to assist a

child with a disability to benefit from [that instruction].'"

Winkelman v. Parma City Sch. Dist., 550 U.S. 516 (2007) (citing

20 U.S.C. § 1401(29)); id. § 1401(26)(A); id § 1401(9).  A "child

---

accordance with the order of this Court, dated March 30, 2009, Parents have waived their right to raise this issue by failing to file a timely appeal of the alleged due process violation. (Pl.'s An. to counterclaim at ¶ 22.)  Moreover, Parents have not appealed the Hearing Officer's determination that Matthew is not a disabled student under the IDEA.  (An. at 9-10.)

with a disability" includes those who suffer from a "serious emotional disturbance . . . or specific learning disabilities." 20 U.S.C. § 1401(3)(A). A FAPE must be provided "under public supervision and direction, . . . meet the standards of the State educational agency, . . . [and] include an appropriate preschool, elementary school, or secondary school education in the State involved." Winkelman, 550 U.S. at 524 (citing 20 U.S.C. § 1401(9)). It must be provided at "no cost to parents." Id. (citing 20 U.S.C. § 1401(29)). School districts are not required to provide a FAPE that "maximizes" a child's education. See Board of Educ. of Hendrick Hudson Cent. Sch. Dist. v. Rowley, 458 U.S. 179, 199 (1982) (finding that a FAPE does not require "the furnishing of every special service necessary to maximize each handicapped child's potential"). Rather, school districts are obligated "to provide an IEP [individualized educational program] that is 'reasonably calculated' to provide an 'appropriate' education as defined in federal and state law." T.B. ex rel. N.B. v. Warwick Sch. Comm., 361 F.3d 80, 83 (1st Cir. 2004) (quoting Rowley, 458 U.S. at 207).

To ensure that every qualifying child receives a FAPE, school districts must develop an IEP that is tailored to the child. Rowley, 458 U.S. at 181. School districts must "conduct a full and individual initial evaluation . . . before the initial provision of special education and related services to a child

4

with a disability." 20 U.S.C. § 1414(a)(1)(A).  This evaluation
should rely upon "a variety of assessment tools and strategies to
gather relevant functional, developmental, and academic
information, including information provided by the parent." Id. §
1414(b)(2)(A).  The evaluation should "not use any single measure
or assessment as the sole criterion for determining whether a
child is a child with a disability or determining an appropriate
educational program for the child." Id. § 1414(b)(2)(B).

        The IDEA provides for administrative and judicial
review of an IEP. See 20 U.S.C. § 1415(a) (2008).  In
Pennsylvania, there is a two-tiered system of administrative
review. See 22 Pa.Code § 14.162(o)(2004).  Under this system,
parents who object to an IEP may request an impartial due process
hearing conducted by a hearing officer. Id. § 14.162(b).  The
hearing must be held within thirty days of the request. Id. §
14.162(q)(1).  A party aggrieved by the hearing officer's
decision may appeal to a Special Education Due Process Appeals
Panel. Id. § 14.162(o).  An aggrieved party may then appeal that
decision by initiating a civil action in federal district court.
Id. § 1415(i)(2)(a).  The court "may award a disabled student the
cost of [a] private placement [in a private school] if (1) the
court determines [that] the student's IEP is inappropriate and
(2) the student demonstrates that the private placement he seeks
is proper." Ridgewood Bd. of Educ. v. N.E ex rel. M.E., 172 F.3d

5

238, 248 (3d Cir. 1999); see also N.M. ex rel. M.M. v. Sch. Dist.
of Phila., 585 F. Supp. 2d 657, 669 (E.D. Pa. 2008) (same).

    B. Section 504 of the Rehabilitation Act

        The Rehabilitation Act of 1973, 29 U.S.C. §§ 701, et
seq., and Section 504 of the Act, 29 U.S.C § 794, prohibit
discrimination in schools that receive federal funding, on the
basis of disability .  "There are no bright line rules to
determine when a school district has provided an appropriate
education as required by § 504 and when it has not." Molly L. v.
Lower Merion Sch. Dist., 194 F. Supp. 2d 422, 427 (E.D. Pa. 2002)
(Dubois, J.).  The Third Circuit has recognized that the
substantive requirements of the Rehabilitation Act's negative
prohibition and the IDEA's affirmative duty have few
differences.[2]  Ridgewood, 172 F.3d at 253.  The Court has "noted

_____

    [2] The IDEA and Section 504 claims are similar causes of
actions. The IDEA imposes an affirmative duty on states which
accept certain federal funds to provide a FAPE for all their
disabled children. 20 U.S.C. § 1411 (2005); Lawrence Tp. Bd. of
Educ. v. New Jersey, 417 F.3d 368, 370 (3d Cir. 2005) (citing 20
U.S.C. § 1412(a)(1)).  Section 504 is a negative prohibition
against disability discrimination in federally-funded programs.
29 U.S.C. § 794(a) (2002).

    The IDEA and § 504 differ in the scope of their coverage.
"Although the two laws overlap significantly, it is well
recognized that Section 504 covers more students than does [the]
IDEA. Students with disabilities who are eligible for services
under [the] IDEA are also covered by the prohibitions against
discrimination on the basis of disability in Section 504 and its
implementing regulation at 34 CFR Part 104, but students covered
only by Section 504 are not entitled to the rights and
protections enumerated by [the] IDEA and its implementing
regulations at 34 CFR Part 300." Brendan K. ex rel. Lisa K. v.

that the regulations implementing § 504 require school districts

provide a free appropriate education to each qualified

handicapped person in [its] jurisdiction." Ridgewood, 172 F.3d at

253. "[T]he failure to provide a free appropriate public

education violates [the] IDEA and therefore could violate § 504."

Ridgewood, 172 F.3d at 253.  However, a violation of the IDEA is

not a per se violation of § 504 and the elements of a § 504 must

still be proved.  Andrew M. v. Del. County Office of Mental

Health and Mental Retardation, 490 F.3d 337, 350 (3d Cir. 2007);

Derrick F. v. Red Lion Area Sch. Dist., No. 06-1463, 2008 WL

4890178, at *12 (M.D. Pa. Oct. 31, 2008).

        In order to establish a violation of § 504, a plaintiff

must prove that "(1) he is 'disabled' as defined by the Act; (2)

he is 'otherwise qualified' to participate in school activities;

(3) the school or the board of education receives federal

financial assistance; and (4) he was excluded from participation

in, denied the benefits of, or subject to discrimination at, the

school." Ridgewood, 172 F.3d at 253 (citing W.B. v. Matula, 67

---

Easton Area Sch. Dist., 2007 WL 1160377, at *12 (E.D. Pa. Apr.
16, 2007) (citing Muller v. Comm. on Special Educ. of E. Islip
Union Free Sch. Dist., 145 F.3d 95, 100 n.2 (2d Cir. 1998)
(noting "[t]he purposes of the Rehabilitation Act are similar to
that of the IDEA, but the Rehabilitation Act is broader in scope.
. . . The definition of 'individual with a disability' under §
504 of the Rehabilitation Act is broader in certain respects than
the definition of a 'child with [a] disabilit[y]' under the
IDEA.").

F.3d 484, 492 (3d Cir. 1995)), <u>abrogated on other grounds</u> by <u>A.W.
v. Jersey City Pub. Schs.</u>, 486 F.3d 791, 803-06 (3d Cir. 2007).
The plaintiff must demonstrate that the defendant knew or should
reasonably have been expected to know of her disability but need
not prove that the discrimination was intentional. <u>Ridgewood</u>, 172
F.3d at 253.

     C. Disposition on the Administrative Record

       When an aggrieved party initiates a civil action in a
federal district court, the court "(i) shall receive the records
of the administrative proceedings; (ii) shall hear additional
evidence at the request of a party; and (iii) basing its decision
on the preponderance of the evidence, shall grant such relief as
the court determines is appropriate." 20 U.S.C. § 1415(i)(2)(B).
"Judicial review in IDEA cases differs substantively from
judicial review in other agency actions, in which the courts are
generally confined to the administrative record and are held to a
highly deferential standard of review." <u>Susan N. v. Wilson Sch.
Dist.</u>, 70 F.3d 751, 757 (3d Cir. 1995).  In IDEA cases, district
courts are required to give "due weight" to the factual findings
of the state administrative agency. <u>Rowley</u>, 458 U.S. at 206.  The
Court of Appeals has defined "due weight" as "modified de novo
review." <u>S.H. v. State-Operated Sch. Dist. of City of Newark</u>, 336
F.3d 260, 270 (3d Cir. 2003).  Under this standard, "a district
court is required to make findings of fact based on a

preponderance of the evidence contained in the complete record, while giving some deference to the fact findings of the administrative proceedings." Id. (quoting Knable v. Bexley City Sch. Dist., 238 F.3d 755, 764 (6th Cir. 2001)). "Factual findings from the administrative proceedings are to be considered prima facie correct. '[I]f a reviewing court fails to adhere to them, it is obliged to explain why.'" Id. (quoting M.M. v. Sch. Dist. of Greenville County, 303 F.3d 523, 530-31 (4th Cir. 2002)) (internal citations omitted).

When reviewing an administrative decision in a Pennsylvania IDEA case, a federal court is "required to defer to the [Hearing Officer's] factual findings unless it can point to contrary nontestimonial extrinsic evidence on the record." S.H., 336 F.3d at 270 (citing Carlisle Area Sch. v. Scott P., 62 F.3d 520, 529 (3d Cir. 1995)). The court "must explain why it does not accept the [Hearing Officer's] findings of fact to avoid the impression that it is substituting its own notions of sound educational policy for those of the agency it reviews." Id. (citations omitted); see also Travis G. v. New Hope Solebury Sch. Dist., 544 F. Supp. 2d 435, 441 (E.D. Pa. 2008) ("The Court is not . . . to substitute its own notions of sound educational policy for those of local school authorities.") (citations omitted); L.R. v. Manheim Twp. Sch. Dist., 540 F. Supp. 2d 603, 614 (E.D. Pa. 2008) (same). "Only those procedural violations of

the IDEA which result in loss of educational opportunity or seriously deprive parents of their participation rights are actionable." C.M. v. Bd. of Ed., 128 Fed. App'x 876, 881 (3d Cir. 2005) (non-precedential); see also Souderton Area Sch. Dist. v. J.H., No. 08-2477, 2009 WL 349733, at *6 (E.D. Pa. Feb. 11, 2009) ("Procedural errors do not violate the right to a FAPE unless they result in 'the loss of educational opportunity, seriously infringe upon the parents' opportunity to participate in the IEP formulation process, or cause a deprivation of educational benefits.") (citations omitted).

III. ANALYSIS

   A.   Matthew's Disability

        The parties primarily disagree over whether the Hearing Officer failed to consider if Matthew's disability, in its "corrected state," substantially limited a major life activity. (Pl.'s Br. at 10.)  The District argues that the Hearing Officer failed to adequately consider Matthew's § 504 eligibility in light of whether his ADHD was controlled with medication.  It is the District's contention that it offered sufficient evidence to conclude that Matthew's medication controlled his ADHD and enabled him to think and function as an average person.  Thus, the medication mitigated Matthew's disability and the Hearing Officer failed to correctly consider this evidence and determine if Matthew's ADHD substantially impacted a major life activity.

The facts of this case are not seriously in dispute.  What
appears to be at issue is whether the Hearing Officer applied the
correct legal standard to the facts of this case.

　　B. <u>Sutton</u> Mitigation Analysis

　　　　The Supreme Court has held that the determination of
whether an individual is disabled, under the ADA, must take into
account any corrective measures "that mitigate the individual's
impairment." <u>Sutton v. United Air Lines, Inc.</u>, 527 U.S. 471, 475,
482 (1999), superseded by statute, ADA Amendments Act of 2008,
Pub.L. No. 110-325, 122 Stat. 3553 (2008).  In other words, when
an impairment is corrected by mitigating measures, "it does not
'substantially limi[t]' a major life activity." <u>Id.</u> at 483
(alteration in original).  Disability must be assessed on a
case-by-case basis, as it is an individualized inquiry. <u>Toyota
Motor Mfg., Ky., Inc. v. Williams</u>, 534 U.S. 184, 198 (2002);
<u>Sutton</u>, 527 U.S. at 483.

　　　　The American with Disabilities Act (ADA) definition of
"disability" is relevant here, as ADA definitions and case law
analysis are significantly similar to § 504. <u>See</u> 42 U.S.C.
§1201(1)(A).  The ADA defines "disability" with respect to an
individual as "a physical or mental impairment that substantially
limits one or more of the major life activities of such
individual." 42 U.S.C. § 12102(2).  When considering an
individual's disability under the ADA, the court considers the

11

nature, severity, duration, and permanent or long-term impact of the impairment in assessing whether it substantially limits plaintiff in a major life activity.  Toyota Motor, 534 U.S. at 194-95 (quoting 45 C.F.R. § 84.3(j)(2)(i) (2001)), superseded by statute, ADA Amendments Act of 2008, Pub.L. No. 110-325, 122 Stat. 3553 (2008).  "It is insufficient for individuals attempting to prove disability status under this test to merely submit evidence of a medical diagnosis of an impairment." Id. at 198.

C. Parents' Argument

The Parents contend that Matthew's ADHD constitutes a disability and that, despite the medication, Matthew's ability to participate in learning and thinking activities remained substantially impaired.  They argue that the evidence on the record reflects that the ADHD medication was not fully effective in regulating Matthew's learning problems and behavior, but continued to require adjustment.  Matthew's mother testified that despite the ADHD medication, Matthew still did not turn in assignments and his performance was not "consistent". (Hr'g Tr. at 504:4-14.)  Matthew's father testified that Matthew's medication had to be adjusted at least twice before he was suspended. (Id. at 40-41.)

Dr. David Libon, defense expert and a clinical neuropsychologist who evaluated Matthew, testified that

12

medication can impact ADHD, but not eliminate the need for support or reasonable accommodation.  He testified that medication can improve or worsen ADHD and that medication does not obviate or cure these conditions. (Id. at 215:1-13.)  Dr. Libon recommended that Matthew continue to be supervised by a teaching professional or specialist to help Matthew with his homework and guide him through the school curriculum in general. (Id. at 207:12-25-208:1-4; Pl.'s Ex. 13 ("Libon Report").)

D. Districts' Argument

The District points to evidence in the record that supports the finding that Matthew's medication controlled his ADHD so that his condition did not limit his ability to perform major life activities when he took the medication properly.  Dr. Lisa Zinman, a school psychologist who evaluated Matthew, testified that he functioned as an average student when taking medication. (Id. at 172.)  Dr. Zinman claimed that Matthew did not need a § 504 plan because of his ADHD medication. (Id. at 173:20, 174:24-25-175:1-2.)  Dr. Zinman also testified that when Matthew was taking medication he was a "different kid" and able to complete and hand in his assignments in a timely manner. (Id. at 178:11-25-179:1-6.)

Matthew himself, as well as his family, also seemed to notice his marked academic improvement when he was medicated. (Id. at 39:8-12, 178:19-25-179:1-6.) Moreover, nontestimonial

evidence in the record supports Plaintiff's contention that

medication significantly improved Matthew's condition. (See Pl.'s

Ex. 1 at 18, 20; Pl.'s Ex. 4 at unnumbered page 9-11, Letter to

MBIT Staff from Matthew; Id. at unnumbered pages 12-13, Letter

from Matthew's parents; Def. Ex. 3 at 3, Letter from Thomas

Disque.)

   E. The Hearing Officer's Analytical Error

      The Court finds that the Hearing Officer failed to

adequately consider Matthew's ADHD when controlled with medicine.

The Hearing Officer recognized that Matthew has ADHD, but failed

to consider whether the disability, when controlled with

medication, substantially impacts a major life activity.  The

Hearing Officer failed to consider the Sutton mitigating factor

analysis or consider that the Third Circuit,[3] other Courts of

---

[3]      The Third Circuit and previous courts in this district
have routinely considered the impact of ADHD, as controlled by
medication, on the major life activities of individuals with the
condition in various contexts. See e.g., Collins v. Prudential
Inv. and Retirement Services, 119 Fed. App'x 371, 379 (3d. Cir.
2005) (affirming the district court's holding that the mitigating
effect of ADHD medication negated her disability designation
under the ADA as the "[t]he test for determining the effect of
mitigating measures is not whether the mitigating measures
constitute a cure.") (non-precedential); see also Richardson v.
Barnhard, 136 Fed. App'x 463, 466 (3d Cir. 2005) (affirming the
ALJ and District Court's consideration of a child's ADHD, as
controlled by medication, in the context of supplemental security
income) (non-precedential); Glenn ex rel. Norfleet v.
Commissioner of Social Security, 67 Fed. App'x 715 (3d Cir. 2003)
(affirming the finding of ALJ that child's ADHD was controlled by
medication as evidenced by school reports, intelligence
evaluations, teacher reports in the context of social security
income) (non-precedential); Hairston ex rel. Rowe v. Barnhart, 54

14

Appeal[4] and other courts in this district have regularly

considered the mitigating effect of medication when evaluating

ADHD disability.

In the section of his decision entitled "Chapter

15/Section 504 Eligibility," the Hearing Officer discussed the

fundamental definition of a disabled individual under § 504. The

Hearing Officer also acknowledged the District's evaluation that

Matthew had been diagnosed with ADHD and, with medication, was

able to manage his ADHD with success. "[I]t is clear Matthew has

_____

Fed. App'x 41 (3d Cir. 2002) (same) (non-precedential).

[4]    See e.g, <u>Calef v. Gillette Co.</u>, 322 F.3d 75 (1st Cir.
2003) ("a court is required to take into account the plaintiff's
'ability to compensate for the impairment.' Here, [plaintiff]
compensated [his ADHD] through Ritalin and counseling. His own
testimony was that in 1996 Ritalin helped control most of the
effects of ADHD while he was working. . . .") (citing
<u>Albertson's, Inc. v. Kirkingburg</u>, 527 U.S. 555, 565 (1999));
<u>Knapp v. City of Columbus</u>, 192 Fed. App'x 323 (6th Cir. 2006)
(finding that Plaintiffs who admitted their medically treated
ADHD significantly improved their ability to learn failed to
establish that ADHD substantially limited their ability to learn
for purposes of the ADA)(non-precedential); <u>Palotai v. Univ. of
Md.</u>, 38 Fed. App'x 946 (4th Cir. 2002) ("To the extent that
[plaintiff] claims that his learning disabilities substantially
limit the major life activity of learning, [plaintiff] must show
that his [medicated ADHD] significantly restricts his ability to
learn. In evaluating this claim, we must consider whether
[plaintiff] is unable to learn in comparison to the average
person in the general population.")(non-precedential) ;
<u>Bercovitch v. Baldwin Sch.</u>, 133 F.3d 141, 155 (1st Cir. 1998)
(holding that a student's learning abilities were not
substantially impaired under the ADA where the student's
medicated ADHD affected his capacity to "achieve his absolute
maximum learning and working potential" yet the student never
experienced significant academic difficulties and excelled
academically for most of his life).

ADHD . . . [the school report] indicated Matt is able to manage

his ADHD and meet with success. . . . when not taking medication,

Matt demonstrates great difficulty controlling his thoughts and

actions[.]" (Hr'g Decision at 18.)  The Hearing Officer

acknowledged Sutton and Schmacher as "helpful," but failed to

take into account the effect of Matthew's medication when judging

whether Matthew was substantially limited in a major life

activity.

The Hearing Officer's limited analysis simply states

what is uncontested, that Matthew has ADHD.  However, Supreme

Court precedent instructs that merely having an impairment does

not make a student disabled for purposes of § 504. Toyota Motor,

534 U.S. at 198.

In his decision regarding Matthew, the Hearing Officer

noted Sutton and Schumacher but did not analyze the facts in

light of the legal standard, this was error.  In Schumacher, the

court considered Sutton and whether the plaintiff's ability to

engage in major life activities was substantially limited by

ADHD, "even in its corrected state, that is, even when she

properly [took] her medication as prescribed." Schumacher v.

Souderton Area Sch. Dist., No. 99-1515, 2000 WL 72047, at *8

(E.D. Pa. Jan. 11, 2000) (Giles, J.).  The Schumacher court held,

"[i]f medication controls ADHD such that it enables [plaintiff]

to think, sleep, and otherwise function as would the average

16

person, just as corrective eyewear enables a person with myopia to attain 20/20 vision, [plaintiff] would not have a disability under the ADA". Id. Ultimately, the Schumacher court found that at the motion to dismiss stage, the court did not have enough information to determine whether the plaintiff's ADHD substantially limited her ability to perform major life activities. Id.

Also absent from the Hearing Officer's decision was any reference to evidence presented by the District regarding Matthew's school performance when taking medication. The Court notes that Dr. Zinman, a school psychologist who evaluated Matthew and is familiar with § 504 requirements, directly testified about her evaluation report. She claimed that because of Matthew's medication, his ADHD was controlled, he performed well in school and he did not need a § 504 plan.[5] (Hr'g Tr. at 173:20, 174:24-25-175:1-2; Pl.'s Ex. 1 at 18, 20.) Moreover, further evidence in the record revealed that when Matthew was

---

[5] Other courts have concluded that a student who learns as well as the average student does not have an impairment that substantially affects the major life activity of learning. See Bercovitch, 133 F.3d at 155-56 (no disability where student's achievement is "consistently above average"); Wong v. Regents of the Univ. of Cal., 379 F.3d 1097, 1108 (9th Cir. 2004) (finding that a "claim to be 'disabled' is fatally contradicted by his ability to achieve academic success, without special accommodations"). Similarly, a student is not substantially impaired if his disability affects only one aspect of his education; rather, "[t]he impairment must limit learning generally." Knapp v. Northwestern Univ., 101 F.3d 473, 481 (7th Cir. 1996).

taking his prescribed medication, he was not distracted in class and his grades improved dramatically.  (Pl.'s Ex. 2; Ex. 1 at 7; Ex. 4 at 1.)  The Parents' expert, Dr. Libon, did not opine to the contrary.

The Court finds that the Hearing Officer erred when he summarily concluded, without considering the effects of medication, that Matthew was disabled.  Therefore, the Court must remand this issue to the Hearing Officer to properly consider all the evidence in the record and the mitigating effect of Matthew's ADHD medication.

Accordingly, the Court need not now reach the question of tuition reimbursement or compensatory education.  The Hearing Officer must first determine if Matthew is disabled and eligible under § 504 before the Court may consider if the Parents are entitled to relief.

IV. CONCLUSION

The cross motions for summary judgement are both denied without prejudice.  The Court remands the case to the Hearing Officer to properly consider all the evidence in the record and the mitigating effect of Matthew's ADHD medication to determine Matthew's eligibility under Section 504.