IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| CENTENNIAL SCHOOL DISTRICT, | : | CIVIL ACTION |
| | : | NO. 08-982 |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| PHIL L. and LORI L. ex. rel. MATTHEW L., | : | |
| | : | |
| Defendants. | : | |

**FILED**

JUL 29 2011

MICHAEL E. KUNZ, Clerk
By_____ Dep. Clerk

M E M O R A N D U M

EDUARDO C. ROBRENO, J.                    July 29, 2011

## I. INTRODUCTION

This action arises as a cross-appeal from the decision
of Pennsylvania Special Education Hearing Officer David F.
Bateman ("Hearing Officer Bateman").  The parties are Centennial
School District ("District") and Matthew L. ("Matthew"), by and
through his parents Phil L. and Lori L. ("Parents") (collectively
"Defendants").  On January 11, 2008, Hearing Officer Bateman
issued a decision holding that the District should have deemed
Matthew eligible for special education under § 504 of the
Rehabilitation Act, 29 U.S.C. § 794 ("§ 504").  He also held that
Parents and Matthew are not entitled to relief in the form of
compensatory education, tuition reimbursement, and transportation
costs.  On October 4, 2010, Hearing Officer Anne L. Carroll

("Hearing Officer Carroll") reaffirmed Hearing Officer Bateman's decision insofar as he concluded that Matthew should have been deemed eligible under § 504.

The District and Parents have filed motions for judgment on the administrative record, or in the alternative, for summary judgment. The District challenges both Hearing Officers' eligibility determinations, and Parents challenge Hearing Officer Bateman's denial of compensatory education, tuition reimbursement, and transportation costs. For the reasons set forth below, the Court will affirm Hearing Officer Bateman's eligibility determination insofar as he found that Matthew was § 504 eligible from February 2006 to mid-January 2007. The Court will vacate Hearing Officer Bateman's and Carroll's eligibility determinations to the extent that they found Matthew to be § 504 eligible post-medication. As to the issue of remedies, the Court will remand the matter for findings of fact and conclusions of law as to whether Matthew was denied a free appropriate public education ("FAPE") from February 2006 to mid-January 2007 and, if so, what amount of compensatory education is appropriate.

## II. BACKGROUND

### A. General Background

Matthew is currently twenty years old and resides in, and previously attended, the District. Matthew has experienced

significant difficulty in the school setting since sixth grade. (Def. Mot. for Summ. J. at 2.) In December 2005, during Matthew's eighth grade year, Parents requested that Matthew be evaluated for ADD or ADHD. In response to this request, the District's guidance counselor stated that the District does not do testing/diagnosis of ADD or ADHD. (Bateman FF at ¶ 5.)

Although the District would not do testing for ADD or ADHD, in February 2006, during Matthew's ninth grade year, the District conducted an evaluation that revealed that Matthew was ineligible for special education and related services under 20 U.S.C. §1400, et seq., ("IDEA") or § 504. (Id. at ¶ 6.) On the other hand, the evaluation indicated that Matthew needed assistance for controlling impulsivity, completing homework and class work, sustaining concentration and attention, and developing career goals and short-term goals. The evaluation recommended that Matthew receive outside psychological and psychiatric counseling, a behavior plan to help with school work, weekly progress sheets, extra time on written tests, mentoring at school, participation in vocational programs, and participation in extracurricular activities. (Id.) Although the District determined Matthew was ineligible for a § 504 service plan, he was provided with an informal arrangement of accommodations to assist his education including: an assignment book, preferential seating, rewards for positive behavior, extra time for

3

assignments and tests, a homework plan, and weekly progress reports. (Hearing Trans. at 157, 173, 360-62, 439, 440, 445-49, 464, 468, 474.)

In mid-January 2007, Matthew was diagnosed with inattentive type ADHD by a private clinical psychologist. Based on this diagnosis, Parents obtained a prescription for Adderral. (Def. Mot. for Summ. J. at 4.) Matthew, his Parents, and his teachers saw a marked improvement in his attention and school work when he first began taking his medication as prescribed. (Bateman at 18.) While on medication, Matthew's grades and behavior improved dramatically, but he still had difficulty with completion of homework and organization. (Hearing Trans. at 50-52.) He also required adjustments of his medication to address problems with the effectiveness of the medication. (Id.)

On May 23, 2007, while not taking his ADHD medication, Matthew caused a bomb scare by writing a threatening message on a school bathroom wall. Matthew admitted to writing the message and was suspended for ten days. (Bateman FF at ¶¶ 9-10.) On June 7, 2007, Matthew was afforded a pre-expulsion hearing. At this hearing, Matthew was given six months probation and thirty hours of community service. (Id. at ¶ 12.) In addition to the pre-expulsion hearing, Matthew's Parents sought a hearing to determine whether Matthew's misconduct was a manifestation of his

4

ADHD ("manifestation determination").[1]  The District denied
Parents' request for a manifestation determination, but the
District agreed to conduct a second evaluation of Matthew.  This
evaluation was held on August 24, 2007.  It indicated that
Matthew has a disability but, like the previous evaluation, it
indicated that Matthew was ineligible for special education and
related services.  (<u>Id.</u> at ¶¶ 14-15.)

          Thereafter, based on the bomb threat, the District
moved for Matthew's expulsion.  On November 27, 2008, Matthew was
permanently expelled from the District.  (<u>Id.</u> at ¶ 18.)  Pending
expulsion, Matthew was offered a placement at either Delaware
Valley High School or Lakeside High School.  (<u>Id.</u> at ¶ 19.)
Parents, however, unilaterally decided to place Matthew at the
Wyncote Academy, a private school.  (<u>Id.</u> at ¶ 16.)


          B.    <u>Procedural Background</u>

          Before Matthew was expelled, Parents requested an
administrative due process hearing.  The hearing was held before
Hearing Officer Bateman over four sessions between December 10
and December 20, 2007.  At the beginning of the hearing, Hearing

---

[1]      If a child is eligible for the procedural protections
of the Individuals with Disabilities Act, the educational
placement of that child may not be changed due to a violation of
the code of student conduct if that violation was caused by a
manifestation of the child's disability unless special
circumstances exist.  <u>See</u> 20 U.S.C. § 1415(k)(1)(E)-(G).

Officer Bateman asked counsel to clarify the issues that were
before him:

> THE HEARING OFFICER: Good morning. . . .  The
> purpose of this hearing is to present
> evidence to determine if the student has been
> receiving an appropriate educational program.
> The issue in this hearing relates to, first,
> is the student eligible for services; second,
> whether the student is eligible for tuition
> reimbursement for 2007-2008 for the Wyncote
> Academy; and third, is the student eligible
> as a [sic] remedy of compensatory education
> in the fall of 2006 to the initiation of his
> services at Wyncote Academy.  Is that your
> understanding of the issues, Fred?
>
> MR. STANCZAK [counsel for Matthew's parents]:
> That's correct.
>
> THE HEARING OFFICER: Is that your
> understanding of the issues?
>
> MS. SAIA [counsel for the School District]:
> Yes.  To be specific though he is asking for
> eligibility under IDEA as well as 504, just
> to the extent that there are two different
> standards so that we are clear on that.
>
> THE HEARING OFFICER: Okay. . . .

(Hearing Trans. at 4:1-5:6.)  During opening statements, counsel
for Parents added that Parents were also raising the issue of
whether Matthew should have been afforded a manifestation
determination prior to his expulsion.

On January 11, 2008, Hearing Officer Bateman rendered
his decision ("Bateman Decision"), finding:

> 1. Matthew is eligible as a student requiring
> a Section 504/Chapter 15 service agreement as
> a result of his ADHD.  2. Matthew is not
> eligible    under the Individuals with

> Disabilities Education Act as a student with a
> learning disability.  3. Matthew is not
> eligible for tuition reimbursement at the
> Wyncote Academy.  4. Matthew is not eligible
> for compensatory education services due to a
> denial of free appropriate public education.

(Bateman at 23.)  Hearing Officer Bateman did not address the
issue of whether Matthew should have been afforded a
manifestation determination prior to his expulsion.

Following Hearing Officer Bateman's decision, the
District filed a petition for review with the Commonwealth Court
of Pennsylvania challenging Hearing Officer Bateman's
determination of Matthew's § 504 eligibility.  Parents removed
the matter from the Commonwealth Court to this Court, and they
filed a counterclaim requesting the following relief: (1)
reversal of the Hearing Officer's decision insofar as he found
that Parents are not entitled to an award of compensatory
education or tuition reimbursement and transportation costs for
Matthew's time at Wyncote Academy; (2) a finding that the
District violated Matthew's rights by failing to identify him as
a child with a disability and provide accommodations; and (3) a
finding that Matthew's expulsion was accomplished in violation of
his procedural rights under § 504 and due process.  (See doc. no.
3 at ¶¶ 20-22.)  In response to Parents' counterclaim, the
District filed a motion to dismiss the portion of Parents'
counterclaim asserting that Matthew's expulsion violated his
procedural rights under § 504 and due process.

7

Because Parents had not exhausted their administrative remedies in regards to the issue of whether Matthew was afforded proper process during his expulsion, the case was placed in suspense and remanded. On October 9, 2008, Hearing Officer Carroll issued a decision ("Carroll I") finding that the District provided process to Matthew "similar" to that afforded through a formal IDEA manifestation determination. Hearing Officer Carroll concluded that there was no violation of Matthew's due process rights. (Carroll I at 14.)

On April 6, 2009, the parties submitted amended answers and counterclaims. (See doc. no. 46 and 47.) Again, Parents included a counterclaim averring that Matthew's expulsion violated Matthew's rights under § 504 and due process. (doc. no. 46 at ¶ 22.) This claim, however, was waived given that Parents failed to file a timely appeal of Hearing Officer Carroll's decision. On May 30, 2009, the parties filed cross-motions for judgement on the administrative record, or alternatively, for summary judgment. (See doc. no. 48, 50.)

On March 26, 2010, the Court issued an order denying the cross-motions without prejudice and remanding the case to the administrative level with instructions that the Hearing Officer consider all evidence in the record and determine Matthew's § 504 eligibility in light of whether his ADHD was controlled with medication. See Centennial Sch. Dist. v. Phil L. ex. rel.

8

Matthew L., No. 08-982, 2010 WL 1174206 (E.D. Pa. March 26, 2010)
(Robreno, J.).  The Court held that Hearing Officer Bateman
failed to adequately consider whether Matthew's ADHD, when
controlled with medication, substantially impacts a major life
activity.

On October 4, 2010, Hearing Officer Carroll issued a
decision ("Carroll II") finding that Matthew's ADHD medication
"did not so significantly and consistently mitigate the symptoms
of ADHD and its effect on Matthew's school performance as to
render him ineligible for protection under § 504 during the
second half of the 2006/2007 school year."  (Caroll II at 8-9.)

After Hearing Officer Carroll's second decision, the
parties re-filed their motions for judgment on the administrative
record, or alternatively, for summary judgement.  (See doc. no.
68 and 70.)  These motions are currently before the Court.


C.   Issues Before the Court

Before reaching the merits of the parties' arguments,
the Court must first flesh out the issues that are properly
before the Court.  Parents request that the Court: (1) affirm
Hearing Officer Bateman's decision insofar as he found that the
District violated Matthew's right to a FAPE under § 504;[2] (2)

---

[2]     Hearing Officer Bateman never actually made such a
determination because he found that, as a matter of law, the
remedies of the IDEA are not available when a claim is based
solely on § 504.  As such, after making his eligibility

reverse the decision of Hearing Officer Bateman insofar as he found that the Defendants are not entitled to compensatory education and tuition reimbursement; (3) award Parents tuition reimbursement and transportation costs related to the enrollment of Matthew in the Wyncote Academy for the 2007-2008 school year; (4) award Matthew compensatory education at the rate of six hours per day for every school day between February 28, 2006 and May 23, 2007; and (5) declare Defendants the prevailing parties as to be entitled to an award of attorney's fees and costs.[3] (Def.

determinations, Hearing Officer Bateman did not address the merits of Matthew and Parents' claims for relief.

[3]    In Parents' memorandum they make two additional arguments that the Court will not address: (1) the District failed to fulfill its child find obligations, and (2) the District conducted an inappropriate evaluation in February 2006. Parents did not explicitly raise either issue at the due process hearing, and these issues were not considered by Hearing Officer Bateman. (Bateman at 7.) See Del. Nation v. Pennsylvania, 446 F.3d 410, 416 (3d Cir. 2006) ("Absent exceptional circumstances, this Court will not consider issues raised for the first time on appeal."). Moreover, Parents failed to exhaust their administrative remedies for these claims even though both are actionable under the IDEA and § 504. Exhaustion of these claims should not be excused because the administrative process was capable of bringing the Parents some form of relief on these claims, as it has with their other properly exhausted claims. Brandon V. Chichester Sch. Dist., No. 06-4687, 2007 WL 2155722, at *5 (E.D. Pa. July 25, 2007) (Baylson, J.) ("Administrative exhaustion is required for Section 504 claims to the extent the claims seek relief that is also available under IDEA.") Moreover, on March 30, 2009, the Court issued an Order specifically directing Defendants not to raise new claims. Despite the Court's unambiguous directive, Defendants continue to raise new issues. Based on the aforementioned, these additional claims are not properly before the Court and the Court will not entertain them.

Proposed Order.)

The District requests that the Court reverse the decisions of Hearing Officers Bateman and Carroll insofar as they found that Matthew is eligible under § 504. Additionally, the District requests that the Court affirm Hearing Officer Bateman's conclusion that Defendants are not entitled to compensatory education or tuition reimbursement. (Pl.'s Mot. for Summ. J. at 1-3.)

To summarize, there are two issues before the Court: (1) whether Hearing Officer Bateman and Hearing Officer Carroll correctly found Matthew eligible under § 504; and (2) whether Hearing Officer Bateman correctly found that Parents are not entitled to compensatory education or tuition reimbursement.


**III. DISCUSSION**

  A. <u>Section 504 of the Rehabilitation Act</u>

Since neither party contests Hearing Officer Bateman's decision as to Matthew's ineligibility for services under the IDEA, the Court will focus its attention on Parents' and Matthew's § 504 claims. Section 504 prohibits discrimination on the basis of a disability in schools that receive federal funding. 29 U.S.C. § 794(a). The United States Court of Appeals for the Third Circuit has recognized that the substantive requirements of the Rehabilitation Act's negative prohibition and

the IDEA's affirmative duty have few differences.[4]  <u>Ridgewood Bd.</u>
<u>of Educ. v. N.E. ex rel. M.E.</u>, 172 F.3d 238, 253 (3d Cir. 1999).
Similar to the IDEA's requirement that an eligible student be
provided a FAPE, the Third Circuit has acknowledged held that
"the regulations implementing § 504 require school districts
provide a free appropriate education to each qualified
handicapped person in [its] jurisdiction."  <u>Id.</u>  If a student is
eligible under both the IDEA and § 504 then "the failure to

---

[4]    IDEA and § 504 claims are similar.  The IDEA imposes an
affirmative duty on states which accept certain federal funds to
provide a FAPE for all disabled children.  20 U.S.C. § § 1411,
1412(a).  Section 504 is a negative prohibition against
disability discrimination in federally-funded programs.  29
U.S.C. § 794(a).  However, the IDEA and § 504 differ in the scope
of their coverage:

> Although the two laws overlap significantly,
> it is well recognized that Section 504 covers
> more students than does [the] IDEA.  Students
> with disabilities who are eligible for
> services under [the] IDEA are also covered by
> the prohibitions against discrimination on
> the basis of disability in Section 504 and
> its implementing regulation at 34 CFR Part
> 104, but students covered only by Section 504
> are not entitled to the rights and
> protections enumerated by [the] IDEA and its
> implementing regulations at 34 CFR Part 300.

<u>Brendan K. ex rel. Lisa K. v. Easton Area Sch. Dist.</u>, No. 05-
4179, 2007 WL 1160377, at *12 (E.D. Pa. Apr. 16, 2007) (citing
<u>Muller ex rel. Muller v. Comm. on Special Educ. of E. Islip Union</u>
<u>Free Sch. Dist.</u>, 145 F.3d 95, 100 n.2 (2d Cir. 1998) ("The
purposes of the Rehabilitation Act are similar to that of the
IDEA, but the Rehabilitation Act is broader in scope. . . .  The
definition of 'individual with a disability' under § 504 of the
Rehabilitation Act is broader in certain respects than the
definition of a 'child with [a] disabilit[y]' under the IDEA.")).

provide a free appropriate public education violates [the] IDEA and therefore could violate § 504."  Id.  However, a violation of the IDEA is not a per se violation of § 504 and the elements of a § 504 claim must still be proven.  Andrew M. v. Del. Cnty. Office of Mental Health and Mental Retardation, 490 F.3d 337, 350 (3d Cir. 2007); Derrick F. v. Red Lion Area Sch. Dist., 586 F. Supp. 2d 282, 298 (M.D. Pa. Oct. 31, 2008).

To prevail on a § 504 claim, a Plaintiff must prove the following four elements:

> (1) he is "disabled" as defined by the Act;
> (2) he is "otherwise qualified" to
> participate in school activities; (3) the
> school or the board of education receives
> federal financial assistance; and (4) he was
> excluded from participation in, denied the
> benefits of, or subject to discrimination at,
> the school.

Ridgewood, 172 F.3d at 253 (citing W.B. v. Matula, 67 F.3d 484, 492 (3d Cir. 1995), abrogated on other grounds by A.W. v. Jersey City Pub. Schs., 486 F.3d 791, 803-06 (3d Cir. 2007)). Additionally, the Plaintiff must demonstrate that the District knew or should have reasonably known of the Plaintiff's disability.  Id.  A Plaintiff need not prove that the District's allegedly discriminatory acts were intentional.  Id.

At issue in this case are elements one and four.  The Court will first determine whether Hearing Officers Bateman and Carroll properly concluded that Matthew is "disabled" as defined

by § 504. Next, the Court will determine whether the facts of record establish that Matthew was denied a FAPE under § 504 and entitled to relief for such a denial.

## B. Standard of Review

The court exercises plenary review over the Hearing Officers' legal conclusions. J.D.G. v. Colonial Sch. Dist., 748 F. Supp. 2d 362, 372 (D. Del. 2010) (citing Carlisle Area Sch. Dist. v. Scott P., 62 F.3d 520, 528 n.3 (3d Cir. 1995)). The Third Circuit has not ruled on the standard of review that should be applied to fact finding in a Rehabilitation Act case that arises from an IDEA due process hearing.

In IDEA cases it is clear that the Court "applies a modified version of de novo review and is required to give due weight to the factual findings of the [hearing officer]." L.E. v. Ramsey Bd. of Educ., 435 F.3d 384, 389 (3d Cir. 2006). "Due weight" requires that

> [f]actual findings from the administrative
> proceedings are to be considered prima facie
> correct. If a reviewing court fails to
> adhere to them, it is obliged to explain why.
> The court is not, however, to substitute its
> own notions of sound educational policy for
> those of local school authorities.

S.H. v. State-Operated Sch. Dist. of City of Newark, 336 F.3d 260, 270 (3d Cir. 2003) (alternation and quotation omitted). This standard arises from the language of the IDEA specifying

14

that when an aggrieved party initiates a civil action in a federal district court, the court "(i) shall receive the records of the administrative proceedings; (ii) shall hear additional evidence at the request of a party; and (iii) basing its decision on the preponderance of the evidence, shall grant such relief as the court determines is appropriate." 20 U.S.C. § 1415(i)(2)(B).

Courts are divided as to whether the "due weight" standard applies to administrative findings of fact in the Rehabilitation Act context. One court has stated that "[t]hough the IDEA and Section 504 are similar in their substantive requirements . . ., the [School] Board has not shown why the procedural requirements of the two statutes should be employed interchangeably." Borough of Palmyra, Bd. of Educ. v. F.C., 2 F. Supp. 2d 637, 640 n.3 (D.N.J. 1998). On the other hand, another court has assumed, without discussion, that the same standards of review apply in both IDEA and the Rehabilitation Act cases. Grant v. St. James Parish Sch. Bd., No. Civ. A. 99-3757, 2000 WL 1693632, at *4 n.17 (E.D. La. Nov. 8, 2000) (citation omitted).

It is unnecessary to resolve this issue in this case because, even under the "due weight" standard, the Court has discretion to defer or not defer to the administrative findings. And here, as set forth below, the Court would reach the same result if it were to conduct a de novo review of the record, the least deferential standard of review.

15

C.    Is Matthew "Disabled" as Defined by § 504?

        Hearing Officer Bateman held that, as of February 2006,
Matthew should have been identified as a person with a disability
under § 504 and deemed eligible for a § 504 plan.  (Bateman at
20.)  On remand, Hearing Officer Carroll concluded that, even
with the aid of medication, Matthew should have been identified
as a person with a disability under § 504.  (Carroll II at 8-9.)
In the District's first motion for judgment on the administrative
record, filed May 29, 2009 (doc. no. 48 & 49), and in the
District's current motion for judgment on the record, the
District argues that the administrative record does not support a
finding that Matthew should have been identified as a person with
a disability under § 504 because medication mitigates the
symptoms of Matthew's ADHD such that he was not limited in any
major life activities.  To resolve this issue, the Court must
define the term "disabled" as used in § 504, and then it must
apply the facts of record to this definition.


        1.    Applicable Law

        Section 504 states that "[n]o otherwise qualified
individual with a disability in the United States, as defined in
section 705(20) of this title, shall, solely by reason of her or
his disability . . . be denied the benefits of . . . any program

16

or activity." 29 U.S.C. § 794(a). Section 705(20) directs the Court to look at the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12102, in defining the term "disability" as used in § 504. The ADA defines an "individual with a disability" as any person who "has a physical or mental impairment which substantially limits one or more of such person's major life activities." 42 U.S.C. § 12102(1).[5] "[M]ajor life activities include, but are not limited to, caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working." Id. at § 12102(2).

Since § 504's definition of disability is identical to the ADA's definition, it is appropriate to look to the ADA for guidance in interpreting this definition. Moreover, "nothing [in the ADA] shall be construed to apply a lesser standard than . . . under . . . the Rehabilitation Act . . . or the regulations issued . . . pursuant to [the Rehabilitation Act]." 42 U.S.C. § 12201(a). Thus, the ADA affords individuals at least as much protection as provided by the Rehabilitation Act.

When considering an individual's disability under the

---

[5]   The parties do not contest whether Matthew has an impairment, but they vehemently dispute whether that mental impairment substantially limits Matthew's major life activities of thinking and learning.

ADA, a court should consider the nature, severity, duration, and permanent or long-term impact of the impairment in assessing whether it substantially limits plaintiff in a major life activity. Toyota Motor Mfg., Ky., Inc. v. Williams, 534 U.S. 184, 194-95 (2002) (citing 45 C.F.R. § 84.3(j)(2)(i) (2001)), superseded by statute, ADA Amendments Act of 2008, Pub. L. No. 110-325, 122 Stat. 3553 (2008). "It is insufficient for individuals attempting to prove disability status under this test to merely submit evidence of a medical diagnosis of an impairment." Id. at 198. The individual must also show that the impairment "substantially limits" a major life activity. "The ADA does not define 'substantially limits,' but 'substantially' suggests 'considerable' or 'specified to a large degree.'" Sutton v. United Air Lines, Inc., 527 U.S. 471, 491 (1999), superseded by statute, ADA Amendments Act of 2008, Pub. L. No. 110-325, 122 Stat. 3553 (2008). "While substantial limitations should be considerable, they also should not be equated with utter inabilities." Taylor v. Phoenixville Sch. Dist., 184 F.3d 296, 307 (3d Cir. 1999) (quotations omitted).

Furthermore, the Supreme Court has held that the determination of whether an individual is disabled under the ADA must take into account any corrective measures "that mitigate the

18

individual's impairment."  <u>Sutton</u>, 527 U.S. at 475, 482.[6]  "If a
person is taking measures to correct for, or mitigate, a physical
or mental impairment, the effects of those measures—both positive
and negative—must be taken into account when judging whether that
person is 'substantially limited' in a major life activity and
thus 'disabled' under the Act."  <u>Id.</u>; <u>see</u> <u>id.</u> (holding that
plaintiffs were not "disabled" because their sight impairment was
corrected by either eyeglasses or contact lenses).  Moreover,
because "'substantially limits' appears in the Act in the present
indicative verb form, [the Court] think[s] the language is
properly read as requiring that a person be presently—not
potentially or hypothetically—substantially limited in order to
demonstrate a disability."  <u>Id.</u>  A disability is only found where
an impairment "'substantially limits' a major life activity, not
where it 'might,' 'could,' or 'would' be substantially limiting
if mitigating measures were not taken."  <u>Id.</u> at 482.

         In the Court's remand order, the Court provided further
clarification of this standard by citing to various other courts
that have applied this or a similar standard.  One case that is
particularly helpful to this analysis is <u>Collins v. Prudential</u>

---

        [6]    The ADA Amendments Act of 2008 went into effect on
January 1, 2009 and expanded the definition of "disability."
However, the ADA Amendments are not retroactive.  Thus, <u>Toyota</u>
and <u>Sutton</u> remain the controlling law in this case.  <u>Britting v.
Sec'y, Dept. of Veterans Affairs</u>, 409 F. App'x 566, 569 (3d Cir.
2011).

<u>Investment & Retirement Services</u>, 119 F. App'x 371, 379 (3d. Cir. 2005).  In that case, the Third Circuit addressed whether the plaintiff's ADHD, when treated with medication, substantially limited the plaintiff's major life activities.  <u>Id.</u> at 378-79. The plaintiff testified that although her medication wears off after four hours, "her impairment is corrected when she timely takes her medication."  <u>Id.</u> at 378.  In that case, the court affirmed the district court's ruling that any impairment was corrected with medication because the test requires the court to examine the "effect of mitigating measures [and] not whether the mitigating measures constitute a cure."  <u>Id.</u> at 379.

Another helpful case that applies the mitigating factor analysis set forth in <u>Sutton</u> is <u>Schumacher v. Souderton Area School District</u>, No. 99-1515, 2000 WL 72047, at *8 (E.D. Pa. Jan. 11, 2000) (Giles, J.).  In <u>Schumacher</u>, the plaintiff suffered from ADHD although she pled that it may be controlled with medication.  <u>Id.</u> at *7.  In determining whether plaintiff had sufficiently pled that she was "disabled," the court asked whether plaintiff was substantially limited in any major life activities when her ADHD was "in its corrected state, that is, even when she properly takes her medication as prescribed."  <u>Id.</u> at *8.  The court stated that if medication were to control the plaintiff's "ADHD such that it enables [plaintiff] to think, sleep, and otherwise function as would the average person . . .

20

[plaintiff] would not have a disability under § 12102(2)(A)."
Id.

With these standards in mind, the Court will determine whether Hearing Officer Bateman and Hearing Officer Carroll properly concluded that Matthew qualifies as a person with a "disability" under § 504.

2. Application

Parents seek relief from February 2006 to the end of the 2007-2008 school year. As such, the Court must assess Matthew's § 504 eligibility during two distinct time periods. (See Def. Mot. for Summ. J. at 1; Carroll II at 7.) First, the Court must examine Matthew's eligibility during the time in which Matthew was not taking medication—from February 2006 to mid-January 2007. (See doc. no. 50 (Parents' Original Mot. for Summ. J.); doc. no. 68 (Def. Mot. for Summ. J.).) Second, the Court must assess Matthew's § 504 eligibility while taking medication—from mid-January 2007 to the end of the 2007-2008 school year.

a. Section 504 eligibility pre-medication

As to the time in which Matthew was not taking medication, Hearing Officer Bateman concluded that Matthew was eligible under § 504. (Bateman at 20; Carroll II at 7.) In the District's previous and current motions for summary judgment, the

District only discusses Matthew's eligibility under § 504 during the time in which Matthew took medication.  The District argues that Matthew is ineligible for the protections provided under § 504 because his medication mitigates any effects of his ADHD such that he cannot be classified as "disabled."  The District does not present any arguments as to why Matthew should not be deemed § 504 eligible prior to Matthew's medication.  Nevertheless, the Court will examine Hearing Officer Bateman's decision as to Matthew's eligibility prior to being medicated.

Hearing Officer Bateman stated that as of February 2006, "[t]he District was on notice that [Matthew] may well have a disability."  (Bateman at 19.)  Hearing Officer Bateman stated that Matthew "was distractable, inattentive, and disorganized," and these symptoms "repeatedly manifested in failure to complete homework, study effectively, avoid careless mistakes, and so forth."  (Id.)  The Hearing Officer went on to state that "[t]he evidence in the record is overwhelming that the student's behavior was consistent with the symptoms of Attention Deficit Disorder."  (Id.)  Additionally, Hearing Officer Bateman pointed out that the February 2006 evaluation indicated modest interventions done by the District to try and address some of student's needs which were unsuccessful and "should have provided the District with all the evidence it needed to conclude that student was in need of special education."  (Id. at 19-20.)  As

22

such, Hearing Officer Bateman concluded that "[t]he District was aware of Matthew's ADHD problems in February 2006," and Matthew should have been identified as eligible pursuant to § 504 as early as February 2006.

The District has not submitted evidence to the contrary of Hearing Officer Bateman's decision in regards to the time in which Matthew was unmedicated.[7]  The evidence of record, in fact, supports Hearing Officer Bateman's decision.  At the due process hearing, Dr. Feinman, one of the individuals involved in the February 2006 evaluation, noted significant evidence of ADHD. (Hearing Trans. at 388-89.)  Dr. Feinman stated that Matthew had difficulty attending class and remaining focused.  Additionally, she noted that Matthew scored in the "clinically significant" range across all settings in the areas of inattention on the BASC and the Connors Rating Scale.  (Id. at 394-97.)  Dr. Feinman agreed that these results are consistent with the criteria for the diagnosis of ADHD.  (Id. at 397-98.)  Moreover, she concluded that these problems were interfering with Matthew's ability to be successful in school.  (Id. at 399.)

Parents also presented the testimony of Dr. David Libon, a defense expert and clinical neuropsychologist, who

_____

[7]     The only mention of this issue is in the District's reply memorandum in which it generally states that "[b]etween the February 2006 evaluation and the January 2007 diagnosis, including the time [Matthew] was meeting with a family counselor, Matthew was not eligible under Section 504."  (Pl. Reply at 4.)

evaluated Matthew and testified that the results of the February 2006 evaluation should have led to the conclusion that Matthew was impacted by ADHD.  (Id. at 190-91, 194-98, 195.)  Dr. Libon thoroughly went through the 2006 and 2007 evaluations to support his conclusions.  (Id.)

Based on the aforementioned, Hearing Officer Bateman's decision that Matthew was § 504 eligible during the time he was unmedicated is well-supported by the record.  The Court finds that during the time in which Matthew was unmedicated, he suffered from an impairment that substantially limited his major life activities of learning and thinking.  As such, the Court will affirm Hearing officer Bateman's decision that Matthew should have been deemed eligible under § 504 as of February 2006.

b.  Section 504 eligibility post-medication

The Court must also determine whether Hearing Officers Bateman and Carroll correctly concluded that, even with medication, Matthew qualified as "disabled" under § 504.[8]  The District argues that Matthew's ADHD does not substantially limit his major life activities of thinking and learning when he takes his medication as prescribed.

After examining the record, Hearing Officer Carroll

---

[8]     The Court will focus on Hearing Officer Carroll's second decision because that decision specifically addresses this issue.

concluded that, from mid-January 2007 to the beginning of the 2007-2008 school year, Matthew's ADHD medication did not so significantly and consistently mitigate the symptoms of Matthew's ADHD and its effects on Matthew's learning and thinking as to render him ineligible under § 504.  (Carroll II at 8-9.)  Hearing Officer Carroll found that although Matthew showed significant initial improvement after beginning his medication in mid-January 2007, he still needed classroom accommodations of the kind typically provided to students with ADHD to overcome the effects of his disability.  (Id.)  Also, Matthew's school performance continued to fluctuate due to the diminishing effectiveness of the medication and Matthew's failure to take the medication as prescribed.  (Id.)

After reviewing Hearing Officer Carroll's findings of facts, conclusions of law, and the record, the Court concludes that Hearing officer Carroll misinterpreted the law.  The relevant inquiry is whether Matthew's ADHD substantially limited his major life activities of thinking and learning when he properly took his medication as prescribed.  See Schumacher, 2000 WL 72047 at *8 (stating that in determining whether an individual is "disabled" the court must look at the individual's impairment in its corrected state).  The mitigating effects of the corrective measures do not have to constitute a cure.  See Collins, 119 F. App'x at 378.  Moreover, a disability will only

be found if the impairment "'substantially limits' a major life activity, not where it 'might,' 'could,' or 'would' be substantially limiting if mitigating measures were not taken." Sutton, 527 U.S. at 482.  It is the plaintiff's burden to establish that he or she is disabled.  Ridgewood, 172 F.3d at 253.

The evidentiary record demonstrates that Matthew's ADHD medication, when properly taken, mitigates the effects of Matthew's ADHD to such a degree that it no longer substantially limits his major life activities of thinking and learning.  For example, Dr. Lisa Zinman, a school psychologist who evaluated Matthew in August 2007, testified that Matthew functioned as an average student when taking medication.  (Hearing Trans. at 172.) Dr. Zinman stated that Matthew did not need a § 504 plan because of his ADHD medication.  (Id. at 173:20, 174:24-25-175:1-2.)  Dr. Zinman also testified that when Matthew takes his medication he is a "different kid" and able to complete and hand in his assignments in a timely manner.  (Id. at 178:11-25-179:1-6.)  Dr. Zinman's statements during her testimony are further supported by the report she prepared in August 2007 after evaluating Matthew. (August 2007 Report at 20.)

Moreover, statements from Matthew and his family indicate substantial improvements when Matthew began his medication.  In a letter written to the school after Matthew made

the bomb threat, Matthew indicated that once he was diagnosed and began taking medication, "he began to 'look at life and school differently.'" (<u>Id.</u> at 5.) Matthew indicated that by the end of the third marking period of the 2006-2007 school year, right after he began medication, he felt like he "was making real improvement in his grades and behavior." (<u>Id.</u>) Additionally, his father stated in a letter to the District that once Matthew began his medication "his grades and behavior improved noticeably." (<u>Id.</u>) At the hearing, Matthew's mother testified that she noticed changes in Matthew after he began his medication. (Hearing Trans. at 503:18-24.) She stated that "[h]e seemed to be more focused with school. He seemed to be a little more interested." (<u>Id.</u> at 504:1-3.) Matthew's mother's only complaint was that "there were still assignments that were not turned in . . . it just wasn't consistent." (<u>Id.</u> at 504:9-14.)

In addition, Matthew's private clinical psychologist, Thomas L. Disque, wrote a letter to the District indicating that Matthew's medication improved his academic performance and self-control. (Disque Letter from 5/23/07.) Matthew's teachers also noted the positive impact that medication had on Matthew's performance. They indicated that his self-esteem and self-advocacy improved, that he was excited by his ability to do well in school, and that his overall attitude towards himself and

school improved. (Hearing Trans. at 450-51, 468, 431.)
Furthermore, Matthew's grades dramatically increased when he was
on his medication. (August 2007 Report at 7.)

Hearing Officer Carroll correctly indicated that
Matthew's performance experienced decline towards the end of the
2006-2007 school year. This, however, is around the time that
Matthew unilaterally decided not to take his medication. (Id. at
5.) As such, Matthew's performance at the end of the 2006-2007
school year is not relevant for determining whether Matthew is
substantially limited in the major life activities of thinking
and learning post medication because this is not a time when
Matthew's ADHD was in its corrected state. Hearing Officer
Carroll discussed the reasons why Matthew stopped taking his
medication. Such discussion, however, misses the point because
the inquiry revolves around Matthew's ADHD in its corrected state
and when Matthew takes his medication as prescribed. Excusing
Matthew for doing otherwise, while perhaps understandable, is not
legally permissible.

The relevant inquiry is whether Matthew's medication
mitigated his ADHD to such a degree that he no longer was
substantially limited in the major life activities of thinking
and learning, not whether Matthew's ADHD "'might,' 'could,' or
'would' be substantially limiting if mitigating measures were not
taken." Sutton, 527 U.S. at 482. Here, mitigating measures were

taken and substantial evidence indicates that medication remediated Matthew's ADHD such that he was not eligible under § 504. Matthew, his Parents, his teachers, Mr. Disque, and Dr. Zinman all agree that, although Matthew was not "cured" when he took medication, the effects of Matthew's ADHD were adequately mitigated once he began medication.

### 3.   Conclusion

Based on the aforementioned, the Court will affirm Hearing Officer Bateman's decision insofar as he found that Matthew was § 504 eligible from February 2006 to mid-January 2007.  The Court will vacate the decisions of Hearing Officers Bateman and Carroll to the extent they found that Matthew should have been deemed § 504 eligible from mid-January 2007 to the end of the 2007-2008 school year.

### D.   Are Matthew and his Parents Entitled to the Remedies of Compensatory Education, Tuition Reimbursement, and Transportation Costs?

Parents seek to reverse Hearing Officer Bateman's denial of their claims for relief in the form of compensatory education, tuition reimbursement, and transportation costs. Hearing Officer Bateman concluded that such remedies are unavailable under § 504 because Matthew is not IDEA eligible. (Bateman at 22-23.)  Since the Court found that Matthew was not §

504 eligible from mid-January 2007 to the end of the 2007-2008
school year, the Court will not address the remedies available
for a violation of § 504 for that time.  Instead, based on the
Court's eligibility determination, remedies are only available
for a violation of § 504 from February 2006 to mid-January 2007,
when Matthew began medication.  For this segment of time, Parents
only request compensatory education at the rate of six hours per
day for every school day.  (Def. Mot. for Summ. J. at 38.)
Additionally, Parents request that the Court declare "that the
value of the compensatory education award may be applied toward
the costs of tuition and transportation associated with Matthew's
enrollment at the Wyncote Academy for the 2008-2009 school year."
(Id.)

        The District has never disputed the availability of
compensatory education for a claim based solely on § 504.  (See
doc. no. 49, 54, 71, 73).  Rather, the District has consistently
argued that Matthew is not entitled to compensatory education
because he cannot establish the necessary elements to succeed on
a § 504 claim.  When asked to brief the specific issue as to
whether compensatory education is an available remedy under §
504, the District suggested that "compensatory education would
only be available to [Matthew] under Section 504 for an alleged
violation of FAPE if [Matthew] had also claimed (and subsequently
proven) discrimination solely on the basis of disability."

(Supp. Briefing at 11-12.)  After examining the District's argument in full, it appears that the District does not argue that the remedy of compensatory education is unavailable under § 504, but rather that Matthew is not entitled to such a remedy because he cannot establish the elements of a § 504 claim and the denial of a FAPE.[9]  As such, since the District has not seriously argued otherwise, the Court will assume, without deciding, that compensatory education is an available remedy for a claim brought under § 504 alleging a denial of a FAPE.  The Court will now turn its attention to determining whether Parents have established the elements of a § 504 claim based on a denial of a FAPE.

To prevail on a claim under § 504, Parents must prove that "(1) [Matthew] is 'disabled' as defined by the Act; (2) [Matthew] is 'otherwise qualified' to participate in school activities; (3) the school or the board of education receives federal financial assistance; and (4) [Matthew] was excluded from participation in, denied the benefits of, or subject to discrimination at, the school."  Ridgewood, 172 F.3d at 253. Parents do not need to establish that the District's alleged discriminatory acts were intentional.  Id.  In addition, Parents must establish that the District knew or should have known of

---

[9]     While the District examined the remedies explicitly made available in § 504 and the regulations implementing § 504 in its supplemental briefing, it principally argued that Defendants cannot fulfill the requirements of a claim brought under § 504.

Matthew's disability.  Id.

As to prong four, Parents argue that Matthew, a § 504 eligible individual, was denied a FAPE because he was not provided a service agreement and necessary accommodations. Parents allege that this resulted in Matthew being denied a benefit provided to all students—a FAPE—solely because of his disability.  This position is supported by Andrew M., 490 F.3d at 350.  In Andrew M., the Third Circuit stated that the regulations accompanying § 504 adopt the IDEA's requirement that a handicapped person is one to which the state is required to provide a FAPE.  Id.  The Andrew M. court went on to state that when a disabled child is denied a FAPE, it violates the IDEA and § 504 "because it is denying a disabled child a guaranteed education merely because of the child's disability.  It is the denial of an education that is guaranteed to all children that forms the basis of the claim."  Id.  Consequently, Parents are correct in asserting that they can establish that Matthew was denied a benefit to which all other students were entitled simply on the basis that Matthew was disabled if they can establish a denial of a FAPE.[10]

---

[10]    The District cites to two Eastern District cases to support the proposition that a Plaintiff asserting a violation of § 504 must prove more than a denial of a FAPE.  Eric H. ex rel. John H. v. Methacton Sch. District, 265 F. Supp. 2d 513 (E.D. Pa. 2003); Lauren V., et al. v. Colonial Sch. Dist., No. 07-308, 2007 WL 3085854 (E.D. Pa. Oct. 22, 2007).  The District's reliance on Eric H. is misplaced because, in that case, the plaintiffs did

To prevail on their claim, Parents must establish that Matthew was denied a FAPE.  There is no question as to whether the education was "free" or "public."  Thus, the only question before the Court is whether the education provided to Matthew from February 2006 to mid-January 2007 was "appropriate."  An "appropriate" education "is the provision of regular or special education and related aids and services that (i) are designed to meet individual educational needs of handicapped persons as adequately as the needs of nonhandicapped persons are met and (ii) are based upon adherence to procedures that satisfy" the regulatory requirements of 34 C.F.R. § 104.34 (educational setting), 34 C.F.R. § 104.35 (evaluation and placement), and 34 C.F.R. § 104.36 (procedural safeguards).  34 C.F.R. § 104.33(b)(1).  "There are no bright line rules to determine when a school district has provided an appropriate education as

---

not allege the denial of a FAPE as the basis of their § 504 claim.  <u>Eric H.</u>, 265 F. Supp. 2d at 522.  The <u>Eric H.</u> court specifically noted that rather than asserting the denial of a FAPE, a benefit available to the student's non-disabled peers, the plaintiffs asserted a violation of § 504 based on the denial of one particular service which would not have provided the student any benefit that was available to the student's non-disabled peers.  <u>Id.</u>  The court held that there was no violation of § 504 because the student was "not denied benefits to which non-disabled students have been accorded."  <u>Id.</u>  Similarly, the District's reliance on <u>Lauren V.</u> is misplaced.  In that case, the court held that there was no violation of § 504 because the school district's responsibilities under the IDEA were fulfilled and plaintiffs conceded that this meant its responsibilities under § 504 were also fulfilled.  <u>Lauren V.</u>, 2007 WL 3085854 at *14.

required by § 504 and when it has not." <u>Molly L. ex rel. B.L. v.</u>
<u>Lower Merion Sch. Dist.</u>, 194 F. Supp. 2d 422, 427 (E.D. Pa.
2002).

Under the IDEA, an appropriate education is a program
that provides "significant learning" and confers a "meaningful
benefit." <u>Ridgewood</u>, 172 F.3d at 247. A district, however, is
not required to "maximize the potential of a disabled student."
<u>Id.</u> In determining the standard that should apply when
evaluating whether a § 504 eligible student has been denied an
appropriate education, the <u>Molly L.</u> court examined § 504 cases in
the Second Circuit and noted that the Second Circuit has
characterized an "appropriate" education in terms familiar in the
employment context as a "reasonable accommodation. 194 F. Supp.
2d at 428. The Second Circuit has stressed that "an
'appropriate' education is one that reasonably accommodates the
needs of a handicapped child." <u>Id.</u> (citing <u>J.D. ex rel. J.D. v.</u>
<u>Pawlet Sch. Dist.</u>, 224 F.3d 60 (2d Cir. 2000)).

Based on its review of the Second Circuit, the <u>Molly L.</u>
Court concluded that "[a]lthough the Third Circuit has not
specifically addressed the reasonable accommodation issue in
relation to the Rehabilitation Act's requirement of an
'appropriate' education, . . . a reasonable accommodation
analysis comports with the Third Circuit's explanation that an
'appropriate' education must 'provide significant learning' and

confer 'meaningful benefit.'"  Id.  This Court also finds that a reasonable accommodation analysis comports with the IDEA's guidance that an appropriate education must provide significant learning and confer a meaningful benefit.  Thus, when determining whether Matthew was afforded an appropriate education, the Court will look to whether Matthew was provided significant learning and conferred a meaningful benefit.

Parents argue that Matthew was denied a FAPE from February 28, 2006 to mid-January 2007 because he was § 504 eligible, but he was not provided a formal written Service Agreement.  "In Pennsylvania, § 504 is implemented through the development of a Services Agreement with the school district." Lauren V., 2007 WL 3085854 at *14; see also 22 Pa. Code § 15.7(a) (stating that once parents and a school district "agree as to what related aids, services or accommodations should or should no longer be provided to the protected handicapped student, the district and parents shall enter into or modify a [written] service agreement").

The Service Agreement under § 504 is similar to the Individualized Educational Program ("IEP") that is required to be developed under the IDEA.  Under the IDEA, a state receiving federal educational funding must provide children within that state a FAPE.  See 20 U.S.C. §§ 1412(a)(1)(A), 1401(9).  The FAPE required by the Act is tailored to the unique needs of the child

by means of an IEP.  See id. § 1414(d)(1)(A).  As such, an IEP is a procedural requirement of the IDEA that is used to implement a FAPE.  This is similar to the Service Agreement under § 504.

Pursuant to the IDEA, a flaw within an IEP is deemed a procedural violation.  "In some cases, a procedural violation may rise to the level of a denial of a FAPE."  C.H. v. Cape Henlopen Sch. Dist., 606 F.3d 59, 66 (3d Cir. 2010).  A procedural violation, however, does not amount to a per se denial of a FAPE.  "[A] school district's failure to comply with the procedural requirements of the Act will constitute a denial of a FAPE only if such violation causes substantive harm to the child or his parents."  Id.

Applying these principles to the case before the Court, the issue to be resolved is whether the failure to provide a written Service Agreement from February 28, 2006 to mid-January 2007 resulted in any substantive harm to Matthew or his Parents. In passing, Hearing Officer Carroll mentioned that Matthew's teachers used "strategies for maintaining Matthew's attention and focus, such as initialing an assignment book . . . [and providing] preferential seating."  (Carroll II at 22.) Additionally, the District points out that it used various tactics to "ensure Matthew's continued receipt of an appropriate education."  (Pl.'s Mot. for Summ. J. at 34 (citing Hearing Trans. at 157, 173, 360-62, 439, 440, 448, 464, 466, 468, 478.).)

36

Parents, on the other hand, argue that "there is no record of what accommodations were provided, nor the effectiveness of any such accommodations."  (Def. Reply at 20.)  Moreover, Parents argue that "whatever accommodations were informally provided to Matthew after the 2006 evaluation-the impact of his ADHD on his academic performance was not abated."  (Id.)

Since Hearing Officer Bateman failed to consider whether Matthew is entitled to compensatory education, absent from his decision are any findings of fact as to the services and supports that were provided to Matthew during the time period in question.  Also, absent from his decision are any findings of fact as to whether the absence of a Service Agreement amounted to the denial of a FAPE.

Since the parties dispute the factual question as to what accommodations were provided to Matthew and their effect on Matthew's education, the Court must remand to the administrative level for findings of fact and conclusions of law as to whether Matthew was denied a FAPE from February 28, 2006 to mid-January 2007, and whether Defendants are entitled to the remedy of compensatory education for this time at the rate of six hours a day.

## IV.  CONCLUSION

Based on the aforementioned, the Court will grant the

District's motion in part and vacate the decisions of Hearing Officer Bateman and Carroll insofar as they found that Matthew was § 504 eligible post-medication.  The Court will grant Parents' motion in part and affirm Hearing Officer Bateman's decision insofar as he found that Matthew was § 504 from February 2006 to mid-January 2007.  As to remedies, the Court will remand the matter for findings of fact and conclusions of law as to whether Matthew was denied a FAPE from February 2006 to mid-January 2007 and, if so, what amount of compensatory education is appropriate.  An appropriate order will follow.